40 N.J. Super. 416 (1956)
123 A.2d 391
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE POHLABEL, ALSO KNOWN AS MARK LAMPHERE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered June 11, 1956.
Decided June 15, 1956.
*418 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Lawrence Pohlabel, appellant, pro se.
Mr. Frederick T. Law, Hudson County Prosecutor, attorney for respondent (Mr. Frank J.V. Gimino, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from the Hudson County Court's denial of his application for a writ of habeas corpus and motion to correct an illegal sentence.
The 1950 term of the Hudson County grand jury returned seven indictments (Nos. 330 to 336, inclusive) charging defendant with the crime of forgery, in addition to one (No. 329) charging grand larceny. He pleaded not guilty to all eight; later he retracted his plea as to the forgery indictments and pleaded non vult. On April 6, 1951 County Judge Ziegener sentenced him to serve a term of from three to five years in State Prison on each forgery *419 indictment. Defendant's appendix contains a transcript of the judge's oral remarks at the time of sentencing. He directed that "the sentences on each [forgery] indictment of three to five years shall run consecutively." The county clerk properly recorded the sentences in his day book, but in transcribing them into the court minute book he mistakenly recorded the respective sentences on indictments Nos. 331 to 336 as running consecutively with that imposed on indictment No. 330, so that the aggregate term imposed would be from 6 to 10 years rather than from 21 to 35.
Defendant's first proceeding with relation to these sentences was not concerned with the inconsistency between the original transcript of oral remarks and the written record but was addressed to a completely different point, namely, that he should not have been sentenced under the forgery statute, R.S. 2:132-1 (now N.J.S. 2A:109-1), but under the statute dealing with frauds and cheats  overdrawing credit or checking account with intent to defraud  R.S. 2:134-17 (now N.J.S. 2A:111-15), where the punishment is imprisonment for not more than one year, instead of the term of from three to five years imposed under the forgery statute. To establish this alleged illegality in sentence he on November 29, 1951 filed a motion in forma pauperis with Judge Ziegener for correction of sentence under then Rule 2:7-13 (now R.R. 3:7-13). Therein he recognized and stated that he had been sentenced to three to five years on each indictment, to be served consecutively. The motion was denied, the trial judge specifically informing defendant that "I sentenced you, on each of said indictments [Nos. 330 to 336, inclusive], to from 3 to 5 years in State's Prison, said sentences to run consecutively."
Subsequently, on November 20, 1954, defendant filed an "application for correction of commitment" with the Hudson County Court in which he raised for the first time the inconsistency between the oral sentence pronounced by Judge Ziegener on indictments Nos. 330 to 336, inclusive, and the court minutes, and requested that "his ambiguous terms of sentence set forth by Order of Commitment * * * be *420 corrected by this court to conform to the fact of the Judgment record * * *." The matter was assigned to County Judge Coolahan, Judge Ziegener's term having expired in the meantime. On December 3, 1954 Judge Coolahan ordered the court minutes corrected to conform with the sentences orally imposed by Judge Ziegener; and corrected copies of the commitments were sent to the Principal Keeper of the State Prison.
Defendant then filed an application for a writ of habeas corpus challenging this order, claiming that the record could not be changed without permitting him to appear in open court and affording him an opportunity to be heard and to be confronted with witnesses against him. He charged deprivation of his constitutional rights because the order increased the time he would have to serve in prison. Defendant's application was referred to Superior Court Judge Artaserse who thereupon appointed an attorney to represent defendant, make an investigation of the facts and the law, and report to the court as to whether defendant's representations disclosed to a prima facie degree that he was entitled to the issuance of the writ. R.R. 1:12-9(d). After investigation, assigned counsel reported to the court that he had examined all the pertinent records; that while the day book entry corresponded with the sentences pronounced orally, the minute book showed that a clerical error had been made in transposing the sentences from the day book to the minute book; that this clerical error had been corrected by Judge Coolahan pursuant to R.R. 3:7-14, and that in his opinion the application was without merit. Judge Artaserse, after considering this report and after independent investigation, denied the application on February 24, 1955.
Defendant did not appeal from this order. Instead, he filed another application for a writ of habeas corpus, in forma pauperis, on September 20, 1955, urging the same grounds as before. The application was referred to Judge Coolahan who promptly appointed another attorney to represent defendant. This attorney, after investigation, added another ground *421 to those urged by defendant, viz., that his sentence constituted cruel and unsual punishment in the light of New Jersey Constitution, Art. I, sec. 12. Judge Coolahan denied the application on January 5, 1956, after hearing oral argument. He filed an opinion in which he reviewed the entire record from the time of the original sentencing to Judge Artaserse's denial of a writ on February 24, 1955, and held: (1) the stenographic transcript of the sentencing was perfectly clear and was controlling, and the correction of the clerk's error was in conformity therewith; (2) although the consecutive sentences imposed, aggregating 21 to 35 years, were severe, still they were within the maximum of 49 years that could have been imposed for the high misdemeanors with which defendant was charged, and accordingly there was no cruel and unsual punishment present.
Pending the instant appeal from the order of January 5, 1956, defendant filed another application for a writ with the Mercer County Court, presenting the identical grounds urged before us. The matter was forwarded to Hudson County and referred to County Judge Duffy who, when apprised of the proceedings pending in this court, on April 25, 1956 denied the application on the ground that it was duplicitous and defendant's remedy properly lay before the Appellate Division.
Two questions for determination emerge out of defendant's brief and reply brief. The first inquiry is whether the court's oral delivery of sentence controls the minute book record made by the court clerk, and the second is whether considerations of due process entitled defendant to notice and hearing on the correction of the clerical error, particularly where the sentencing judge had died in the meantime. These were precisely the grounds urged by defendant in his applications for a writ considered by Judges Artaserse and Coolahan, and again presented in the application denied by Judge Duffy.
The State suggests that this court, in the circumstances here present, has the power to protect itself from defendant's abuse of the writ of habeas corpus, on principles of res judicata. As noted in In re Sabongy, 18 N.J. *422 Super. 334, 340-341 (Cty. Ct. 1952), at common law the doctrine of res judicata did not apply in habeas corpus proceedings, although a prior decision is not without weight on a later application. It was there observed that the court may, in the exercise of its discretion, "protect this privileged writ of freedom from abusive use by the filing of successive and repetitious applications therefor by a pertinacious relator." See In re Tremper, 126 N.J. Eq. 276, 281 (Ch. 1939), and the pointed remarks addressed by Judge Jayne to the growing practice of prisoners in launching a succession of applications for the issuance of the writ in State v. Fontano, 26 N.J. Super. 166 (App. Div. 1953). And see State v. Bey, 29 N.J. Super. 331, 332 (App. Div. 1954), where this court observed that out of a desire to aid indigent prisoners our courts have in recent years "encouraged a current flow of petitions for writs of habeas corpus which are sham and baseless * * *. Prisoners have become a distinctive class of litigants to whom special and exceptional privileges are accorded. The payment of filing fees is excused. The court rules are uniformly relaxed * * *." We noted that:
"* * * Experience has now revealed that the benevolent opportunities so afforded most of these prisoners with the best of intentions are being notoriously abused by too many who are manifestly unworthy of such leniency."
We pass by the res judicata argument to deal briefly with the merits. We concur in the conclusions reached by Judges Artaserse and Coolahan on the prior applications and hold that defendant's contentions are completely without merit under the circumstances. His appendix includes the official stenographic transcript of Judge Ziegener's remarks on the day of sentencing. Nowhere does he challenge or in any way take exception to the accuracy of that transcript. Instead, he apparently would have us equate the sentencing judge's remarks with the record found in the court minutes. This being the primary issue upon which he depends, its resolution against him is fatal to his appeal.
*423 The rule in New Jersey is that unless the intention to make sentences run consecutively is clearly spelled out by the judge, the presumption is that they will run concurrently. And where there is a conflict between the oral sentence and the written commitment, the former will control if clearly stated and adequately shown, since it is the true source of the sentence, instead of the latter which is merely the work of a clerk. In re De Luccia, 10 N.J. Super. 374, 380-381 (Cty. Ct. 1950); In re Sabongy, above, 18 N.J. Super., at pages 346-347; State v. Toth, 37 N.J. Super. 414, 416 (Cty. Ct. 1955); cf. State v. Williams, 29 N.J. Super. 309 (App. Div. 1954). The transcribed remarks of the sentencing judge are entirely clear and mean exactly what they say  that is, that service of each term was to be consecutive with that imposed on the prior indictment, so that the total of sentences imposed is 21 to 35 years on the seven indictments. We therefore hold that the recording of the sentences in the minute book must be regarded as a clerical mistake, subject to correction by the court, with or without notice, under R.R. 3:7-14.
The correction not having impaired any substantive right of the defendant, because it merely conformed the official record with the oral sentence imposed in the first instance, there was no occasion for notice. Nor is there presently occasion to allow a hearing on the issue, since any testimony by defendant as to his recollection of what the sentence imposed on April 6, 1951 was, would necessarily fail before the reporter's certified transcript, the accuracy of which defendant concedes.
We agree with Judge Coolahan's conclusion that defendant may not complain that his sentences constitute cruel and unsual punishment, for they were well within the maximum fixed by the statute, R.S. 2:132-1, 2:103-5 (now, respectively, N.J.S. 2A:109-1 and 2A:85-6). Incidentally, the reply brief reveals, and the sentencing court was undoubtedly aware of the fact, that defendant has a criminal record in California and is a parole violator from that State.
Affirmed.