**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0550-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHAHEED BLAMHSAH,
a/k/a SHAHEED HINTON,

     Defendant-Appellant.

_____

Submitted April 20, 2021 – Decided June 23, 2021

Before Judges Fisher and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-07-1980.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

The State's trial evidence included the testimony of Aaron Hammary, also known as Yuck, who was a cooperating State's witness. Hammary called defendant, Shaheed Blamhsah[1] and Wesley Roberson, also known as Black, on New Year's Eve 2015, and enlisted them to rob Bruce Turner, also known as B.J., of money Turner was using to purchase drugs in a deal he had arranged with Hammary. Hammary said he did not participate in the planned robbery, but provided Turner's telephone number so defendant and Roberson could arrange to meet with Turner. According to Hammary, defendant told him he and Roberson encountered Turner. Though Hammary said defendant's accounts of the incident to Hammary varied, evidence showed Turner was shot eight times and was pronounced dead at the scene after police, responding to reports of a shooting in progress, found Turner on the sidewalk stripped of his pants and footwear. The medical examiner testified "the cause of death was multiple gunshot wounds of head, torso, and upper extremities."

---

[1] Defendant advises in his merits brief that his surname—Blamahsah—was misspelled in the caption and on other various documents in the record. We do not see that defendant moved to correct the record or that it was otherwise corrected, so we use the name set forth in the judgment of conviction, and used by defendant in the notice of appeal and his merits brief.

A-0550-19

Defendant was indicted and subsequently found guilty by a jury of first-degree conspiracy to commit murder (count one),[2] N.J.S.A. 2C:5-2 and 2C:11-3(a)(1)(2); first-degree robbery (count three), N.J.S.A. 2C:15-1; first-degree felony murder (count four), N.J.S.A. 2C:11-3(a)(3); second-degree possession of a handgun without a permit (count five), N.J.S.A. 2C:39-5(b); second-degree possession of a handgun with the purpose to use it unlawfully (count six), N.J.S.A. 2C:39-4(a); and third-degree witness tampering (count seven), N.J.S.A. 2C:28-5(a)(1).[3] The trial judge dismissed fourth-degree tampering with physical evidence (count eight), N.J.S.A. 2C:28-6(1), at the end of the State's case. The jury could not reach a unanimous verdict on the charge of first-degree murder (count two), N.J.S.A. 2C:11-3(a)(1)(2); the trial judge dismissed that count without prejudice.

---

[2] Defendant was alleged to have conspired with Roberson, but Roberson passed away prior to defendant's trial.

[3] In an order dated March 27, 2019, the court renumbered the counts of the indictment, which had also included other charges that were severed from this trial. Count five of the original indictment became count one, count six became count two, count seven became count three, count eight became count four, count nine became count five, count ten became count six, count fifteen became count seven and count sixteen became count eight. We use the amended designations as that is how they were presented to the jury.

A-0550-19

After merging counts one, three and six into count four, defendant was sentenced on that felony murder count to life imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and the Graves Act, N.J.S.A. 2C:43-6(c), concurrent to a ten-year term with five years of parole eligibility and subject to the Graves Act for unlawful possession of a weapon (count five). The trial judge imposed a consecutive five-year term with two and one-half years of parole ineligibility for witness tampering (count seven).[4] The judge ordered the life term to run consecutive to defendant's then-current federal sentence.

Defendant appeals the conviction and sentence, arguing:

POINT I

THE ROBBERY AND FELONY-MURDER CONVICTIONS MUST BE REVERSED DUE TO THE OMISSION OF A CHARGE ON THEFT AS A LESSER-INCLUDED OFFENSE OF ROBBERY.

POINT II

THE FELONY-MURDER CONVICTION MUST BE REVERSED BECAUSE MISLEADING

---

[4] The judgment of conviction notes count seven is to run concurrent to count four, but the sentencing transcript is very clear that the judge imposed a consecutive term. See State v. Pohlabel, 40 N.J. Super. 416, 423 (App. Div. 1956) (noting the rule in New Jersey is "where there is a conflict between the oral sentence and the written commitment, the former will control if clearly stated and adequately shown, since it is the true source of the sentence").

INSTRUCTIONS ALLOWED THE JURY TO CONVICT OF FELONY MURDER WITHOUT FINDING ALL OF THE ELEMENTS OF THE OFFENSE.

POINT III

THE IMPOSITION OF THE MAXIMUM TERM OF LIFE, WITH A MANDATORY PAROLE DISQUALIFIER OF [SIXTY-THREE] YEARS AND NINE MONTHS,[5] ON A CONVICTION FOR FELONY MURDER, IN THE ABSENCE OF ANY SENTENCING FACTORS IN AGGRAVATION OF THE OFFENSE, IS GROSSLY EXCESSIVE AND SHOCKS THE CONSCIENCE.

We conclude these arguments are wholly meritless and affirm.

Defendant contends the trial judge erred by failing to sua sponte instruct the jury on theft as a lesser-included offense of robbery. That failure, he argues, deprived the jury of the option to find defendant guilty of theft, a crime upon which the felony murder conviction could not rest. Defendant reasons his conviction for conspiracy to commit murder required the jury to find he "intended to kill Turner, indeed, he planned to kill him. Thus the jury could have found that the planned offense, the murder, was committed first, and that

---

[5] "Solely for the purpose of calculating the minimum term of parole ineligibility pursuant to subsection a. of [NERA], a sentence of life imprisonment shall be deemed to be [seventy-five] years," N.J.S.A. 2C:43-7.2(b); eighty-five percent of seventy-five years is sixty-three years and nine months.

[defendant] took Turner's property after he was killed." According to defendant, if the jury found he did not use force or threats to take Turner's property, see State v. Lopez, 187 N.J. 91, 101 (2006) (recognizing the robbery statute "requires that the threats or violence be carried out in furtherance of the intention to commit a theft"), and defendant committed the theft after he had murdered Turner, he could not be found guilty of felony murder because the predicate offense for that crime was robbery.

While there is no doubt that "theft, by definition, is a lesser-included offense of robbery," State v. Ingram, 196 N.J. 23, 39-40 (2008); see also Lopez, 187 N.J. at 98, defendant's logic fails because the evidence did not "'clearly indicate' the appropriateness of that charge," State v. Choice, 98 N.J. 295, 299 (1985). That tenet is premised on the legislative mandate that "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8(e). When, as here, a defendant does not request a lesser-included jury instruction, "[i]t is only when the facts 'clearly indicate' the appropriateness of that charge" does the trial judge develop a duty to instruct on the charge sua sponte. Choice, 98 N.J. at 299 (noting that duty does not require the trial judge to "meticulously . . . sift through the entire record" to find all possible charges).

A-0550-19

"However, sheer speculation does not constitute a rational basis." State v. Brent, 137 N.J. 107, 118 (1994). "[T]he evidence at trial [must] present[] a rational basis for the jury to acquit the defendant of the greater offense and convict him or her of the lesser." Id. at 123.

The trial evidence did not provide that rational basis. Hammary's testimony provided the details that led to the fatal encounter between Turner and defendant. The genesis of this crime was Hammary's plan to rob Turner of the $15,000 Turner was using to buy drugs he ordered from Hammary. Knowing he could not obtain the drugs Turner wanted, Hammary met with defendant and Roberson. He believed Roberson resembled a dealer from whom he and Turner had previously purchased drugs. Hammary wanted Roberson to pose as that dealer as part of a plan to lure Turner to bring the cash which defendant and Roberson would rob and split with Hammary. Hammary gave defendant Turner's phone number then left defendant and Roberson to execute the plan, testifying he did not want to be with them when they called or know where they were going to meet, because he "didn't want it coming back to [him]."

Hammary admitted the three spoke of murdering Turner, with whom Hammary had had a falling out about a prior "drug dispute." Hammary testified the topic "first came up because . . . of the retaliation, what could happen if . . .

7

[Turner] didn't die," but Hammary testified he "decided against it" because he "didn't feel like it was necessary." There is no other evidence that the three further discussed or planned Turner's murder. The evidence shows the plan was to take Turner's money.

On direct examination, Hammary recounted that defendant, whom he referred to during testimony as Aboo or Abu,[6] told him "a couple of days" after Turner was shot and killed that Roberson initially shot at Turner who ran, and defendant "jumped out [of] the car and . . . finished him off." Hammary said defendant initially told him nothing was taken from Turner except a TEC-9 automatic weapon from Turner's car, explaining on cross-examination, "I asked him what happened and he told me nothing. . . . [T]hey ain't get anything because [Turner] reached for his weapon, so he shot him." Defendant, in March 2017, told Hammary they had taken $30,000 from Turner's car as well as a pair of Air Jordan sneakers from Turner's person. Defendant offered the sneakers to Hammary but did not offer any of the money; Hammary testified he had declined defendant's offer.

Much of Hammary's cross-examination focused on the plan to set up the pseudo-drug deal. After great effort, defense counsel got Hammary to admit he

---

[6] The name has varied spellings in the record transcripts.

was "in it for the money." After defense counsel established that Hammary expected Turner to be armed and knew Roberson was going to be armed,[7] the following colloquy ensued:

> [DEFENSE COUNSEL]: And you knew there was a potential for somebody getting shot once [Turner] found out that [Roberson] was not the connection, is that correct?
>
> [HAMMARY]: No.
>
> [DEFENSE COUNSEL]: What did you expect was going to happen?
>
> [HAMMARY]: The whole premise of it was for him not to find out that he wasn't the connect.
>
> [DEFENSE COUNSEL]: And - - but he could have found out, and you knew that - -
>
> [HAMMARY]: Yeah, I didn't think that - -
>
> [DEFENSE COUNSEL]: - - once he found - - if he were to find out, that somebody is going to get shot?
>
> [HAMMARY]: I didn't honestly think that far into it, to think what would happen if he found out.

None of the trial proofs "clearly indicate[d]" this was planned as anything except a robbery. The evidence established only Hammary had a prior animus

---

[7] Defense counsel, understandably, did not ask if Hammary knew defendant was going to be armed.

A-0550-19

against Turner; defendant had no reason to kill Turner outside the scope of the planned robbery. The State's theory supporting the conspiracy to commit murder charge, as urged by the assistant prosecutor during summation, was that defendant conspired to murder Turner because defendant did not want to leave any witnesses to the robbery. But the State's summation never deviated from its theory of the case:

> Let's talk about some of the facts that we have in this case because all of this comes down to evidence and we can't start talking about the case without talking about the plan, and what the plan was. And the plan, ladies and gentlemen, was a robbery.

The assistant prosecutor emphasized "[t]he conversation was about robbery. [Hammary] was clear, don't kill him." The assistant prosecutor then recounted Hammary's testimony that defendant later told him "we were always going to kill him," to support the State's theory that defendant intended to murder Turner as part of the robbery coverup:

> He's not leaving behind any witnesses to what he did. Whatever we may think about what was going on that night, these people, they were in the street. Them going and shooting him, robbing him, they had to be concerned about a couple of things. Is . . . Turner going to go to the police, is he going to do something himself? They couldn't leave any witnesses behind. That's why the plan was to . . . always kill him. They weren't going to tell [Hammary] that because [Hammary] was setting it up. [Hammary] knew [Turner]. [Hammary] told

10

them, no, don't kill him. But they no shot (sic) of not doing that. They had no choice. They had to kill him.

The evidence does not support defendant's contention that the theft and murder were discrete events. Instead, it shows defendant admitted to Hammary he exited the vehicle to follow Turner, who ran after being shot, to "finish him off." Surveillance video from the scene buttresses that evidence, showing one individual walking and then that same person retreating in the direction from which he came, followed by another individual running. There is no evidence that the infliction of bodily injury or the use of force did not occur during the commission of the theft, including "in an attempt to commit theft or in the immediate flight after the attempt or commission."[8] See N.J.S.A. 2C:15-1(a). Thus, the judge did not err by failing to sua sponte include a jury instruction on the lesser-included crime of theft. See State v. Denofa, 187 N.J. 24, 42 (2006) ("Only if the record clearly indicates a lesser-included charge—that is, if the evidence is jumping off the page—must the court give the required instruction.").

_____

[8] The trial judge did not charge the jury on the elements in N.J.S.A. 2C:15-1(a)(2) and (a)(3).

We also reject defendant's argument that "the felony-murder conviction must be reversed because misleading instructions allowed the jury to convict [defendant] of felony murder without finding all of the elements of the offense." Specifically he contends

> the court explained that the indictment charged murder and felony murder, that they were both forms of murder, and that [defendant] could be convicted of conspiracy to commit murder <u>and</u> conspiracy to commit felony murder. The court stated: "Count [one] is the substantive charge of conspiracy to commit murder and [c]ount [four], which is felony murder."

We disagree with defendant's argument that that quoted portion of the instruction "told the jury that the substantive crime of conspiracy charged in [c]ount [one] applied to both murder and felony murder," and the inaccurate instruction given may have caused the jury to convict defendant "if he committed the nonexistent crime of conspiracy to commit felony murder." That argument is based on defendant's skewed and conflated reading of the judge's charge.

We review defendant's challenge to the jury charge under the plain error standard because defendant posed no objection. <u>State v. Chapland</u>, 187 N.J. 275, 288-89 (2006); <u>R.</u> 2:10-2. Unlike defendant, we consider the instruction as

a whole and in the context "of the overall strength of the State's case." Id. at 289.

The portion of the charge quoted by defendant was made at the beginning of the instructions as the judge explained the difference between principal and coconspirator liability. The judge properly told the jury the State theorized defendant was guilty of murder and robbery as both a principal and coconspirator, and emphasized that coconspirator liability was "to be considered in relation to [c]ount [t]wo of the indictment charging murder, and [c]ount [t]hree charging robbery," and explained that the substantive conspiracy to commit murder charge in count one was different from the coconspirator liability that the jury was considering in its deliberations on counts two and three.

The snippet quoted by defendant followed; the entire portion provided:

> All right. Count [o]ne is the substantive charge of conspiracy to commit murder and [c]ount [f]our, which is felony murder. In relation to [c]ount [t]wo of the indictment, the murder count, you are to consider liability as a principal actor and/or a coconspirator liability.
>    The crimes of [c]ounts one through [f]ive allegedly took place – and it's also on [c]ount [f]our, with the – excuse me – [c]ount [t]hree with the robbery is also on the – as a coconspirator or a principal actor.

A-0550-19

The mention of the felony murder count, and "[c]ounts one through [f]ive" is confusing, but it is clear the judge specifically referred to only counts two and three—the murder and robbery charges—reiterating those to which principal and coconspirator liability pertained. He repeatedly told the jury coconspirator liability applied only to the robbery or murder charges, or both, and that the alleged coconspirator was Roberson. He never related the felony murder charge to count one or to coconspirator liability.

A careful review of the instructions on each of the charged crimes manifests the judge made clear the elements of each crime, which he told the jury to separately consider, and the theories of liability applicable to each. And, not once in his instruction on conspiracy did he mention "felony murder" or "conspiracy to commit felony murder." The judge essentially followed the model jury instructions. "When a jury instruction follows the model jury charge, although not determinative, 'it is a persuasive argument in favor of the charge as delivered.'" State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008) (quoting State v. Angoy, 329 N.J. Super. 79, 84 (App. Div. 2000)).

Moreover, the jury found defendant guilty of first-degree robbery. They therefore concluded he, in the course of committing the theft, inflicted bodily

injury or used force upon Turner, and that he was armed with or threatened the immediate use of a deadly weapon in the course of committing the robbery.[9]

Furthermore, the jury was instructed they could find defendant guilty of felony murder only if they found defendant guilty of robbery:

> You cannot find the defendant guilty of felony murder unless you first find him guilty beyond a reasonable doubt of having committed or attempted to commit the crime of robbery stated in [c]ount [t]hree.
>
> All right. And my instructions – I'm going to give you a jury instruction form that tells you that. If it was not guilty on the robbery, then he's not guilty on the felony murder. All right? So you can only consider this charge if you found guilty on robbery.

The jury is presumed to have followed those instructions. State v. Nelson, 155 N.J. 487, 526 (1998). The instructions did not, as defendant argues, allow his conviction for felony murder "without finding all of the elements" of that crime. We see no error—much less plain error—in the judge's charge. By no means did defendant prove that the charge was inaccurate, much less that it "prejudicially affect[ed]" his substantial rights and the inaccuracy was "sufficiently grievous to justify notice by the reviewing court and to convince

---

[9] The judge did not charge the jury on the other elements that elevate a second-degree robbery to a first-degree robbery. See N.J.S.A. 2C:15-1(b).

the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538 (1969).

Defendant argues the imposed "sentence is not supported by the aggravating factors, is manifestly excessive, and shocks the conscious." He also contends the judge "did not explain how it concluded, despite the fact that the jury convicted [defendant] of felony murder rather than murder, and despite the fact that the court did not find any factors in aggravation of the offense, that the appropriate sentence was not" for a term of thirty-five, forty or even fifty years, less than the life term imposed subject to the NERA period of parole ineligibility.

We disagree. Analyzing the aggravating and mitigating factors, the judge considered that defendant was then thirty-one years old and had an extensive criminal history starting at the age of thirteen. As a juvenile he had "a total of [fourteen] petitions filed against him . . . resulting in nine separate adjudications"; the judge also noted juvenile violations of probation. Defendant also had four prior indictable convictions and violated both probation and

parole. Among the prison terms he received, defendant was serving 150 months in federal prison at the time of this trial.[10]

The judge found aggravating factor three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3), "clearly exists in this case." The judge concluded aggravating factor six, N.J.S.A. 2C:44-1(a)(6), "clearly exists" based on "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted." Lastly, the court found aggravating factor nine, "[t]he need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(9). He accorded "significant weight" to all the aggravating factors. The judge also reviewed the statutory mitigating factors and found none of them applied to this case. The judge concluded "the aggravating factors substantially and overwhelmingly outweigh the [non-existent] mitigating factors."

Where mitigating factors outweigh the aggravating factors the sentence imposed should tilt toward the minimum or, alternatively, should the

---

[10] Defendant pleaded guilty on October 6, 2017 to two separate offenses, conspiracy to commit a Hobbs Act robbery, 18 U.S.C. §1951 (establishing criminal liability of "[w]hoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose"), and use of a firearm during a crime of violence.

A-0550-19

aggravating factors dominate, imposing a sentence on the higher range would be appropriate. State v. Natale, 184 N.J. 458, 488 (2005). The judge applied the Natale Court's instruction in imposing a term at the top of the range. See State v. Buckner, 437 N.J. Super. 8, 37-38 (App. Div. 2014) (finding the trial court appropriately applied aggravating factors three, six and nine, and in light of defendant's extensive criminal history and no mitigating factors found, it was entirely appropriate for the trial court to impose a sentence him "in the higher end of the range"). While the imposition of the maximum sentence within the statutory guidelines "may strike [this court] as a harsh sentence, . . . that is the consequence of the legislative scheme and not a clear error of judgment by the trial court." State v. Dunbar, 108 N.J. 80, 83 (1987). We defer to the experienced trial judge and heed the Court's caution "not to substitute [our] judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014).

The judge adhered to the sentencing guidelines; found three aggravating factors and no mitigating factors based on competent and credible record evidence; and applied the guidelines to the facts of the case so that the sentence imposed does not shock the judicial conscience. See State v. Fuentes, 217 N.J.

57, 70 (2014).  As such, we discern no abuse of discretion.  See State v. Jones, 232 N.J. 308, 318 (2018).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION