**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4592-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DEAN A. VOURDERIS,

     Defendant-Appellant.

_____

Submitted November 30, 2021 – Decided January 26, 2022

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 09-09-1575, 09-09-1577, 09-09-1578, and 09-09-1584.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Catlin A. Davis, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In this appeal, defendant challenges four amended Judgments of Convictions (JOCs) stemming from his involvement in a spree of bank robberies. The court corrected those mandates in one instance to amplify, and in three others to include explicitly, a provision that defendant's sentences were subject to the mandatory terms of the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). Before us, defendant raises the following points:

POINT I

THE TRIAL COURT'S AMENDMENT OF THE JUDGMENTS OF CONVICTION IN 2016 TO INCLUDE AN [EIGHTY-FIVE PERCENT] NERA PAROLE DISQUALIFIER AND A THREE-YEAR PERIOD OF PAROLE SUPERVISION WAS FUNDAMENTALLY UNFAIR AND VIOLATED DEFENDANT'S RIGHTS TO DUE PROCESS BECAUSE THE DEFENDANT HAD AN EXPECTATION OF FINALITY IN HIS SENTENCES AND HIS 2018 PAROLE RELEASE DATE. SEE STATE v. SCHUBERT, 212 N.J. 295, 309 (2012). ADDITIONALLY, THE COURT IMPROPERLY AMENDED THE JUDGMENTS OF CONVICTION OUTSIDE OF DEFENDANT'S PRESENCE AND WITHOUT DEFENDANT'S OR COUNSEL'S KNOWLEDGE.

POINT II

THE PLEA BARGAIN "FAILED ONE OF ITS ESSENTIAL PURPOSES, FAIRNESS," STATE v. MARZOLF, 79 N.J. 167, 183 (1979), BECAUSE DEFENDANT'S REASONABLE EXPECTATIONS UNDER THE PLEA DEAL WERE THAT HE

2

WOULD RECEIVE CONCURRENT SENTENCES,
BUT HE RECEIVED TWO CONSECUTIVE TERMS.
ADDITIONALLY, DEFENDANT WAS
MISINFORMED THAT THE COURT HAD
DISCRETION IN DETERMINING WHETHER TO
SENTENCE HIM TO AN EXTENDED TERM.

POINT III

THE MATTER MUST BE REMANDED FOR
RESENTENCING BECAUSE THE COURT
INCORRECTLY BELIEVED THAT CONSECUTIVE
SENTENCES WERE REQUIRED.
ADDITIONALLY, THE COURT ERRONEOUSLY
FOUND AGGRAVATING FACTOR 11 AND
REJECTED MITIGATING FACTOR 4. FINALLY,
THE COURT FAILED TO APPRECIATE THE
"REAL-TIME" CONSEQUENCES OF NERA AND
DID NOT EXPLICITLY FIND THAT THE
AGGREGATE SENTENCE WAS FAIR.

We have considered defendant's arguments in point I and conclude they
are without merit. The amended JOCs were entirely consistent with the judge's
oral decisions and defendant's understanding of his sentence, and we otherwise
find no deprivation of defendant's procedural or substantive due process rights
related to the court's actions. We decline to address defendant's contentions in
points II and III because we conclude they are precluded by our order limiting
the issues to be considered on this appeal to those raised by the amended JOCs.

A-4592-18

I.

On September 16, 2009, a Middlesex County grand jury returned four indictments charging defendant with eleven crimes related to four bank robberies that took place between January and May 2009. Specifically, he was charged with: 1) second-degree robbery, N.J.S.A. 2C:15-1, and 2; and third-degree theft by unlawful taking, N.J.S.A., 2C:20-3(a), related to a May 8, 2009 robbery of a Cranbury PNC Bank. Defendant was separately charged with: 1) second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1; 2) second-degree robbery; and 3) third-degree theft related to a January 26, 2009 robbery of a North Brunswick PNC Bank, a February 10, 2009 robbery of a North Brunswick Provident Bank, and a March 23, 2009 robbery of an East Brunswick TD Bank.

Defendant was also charged in Somerset County with second-degree conspiracy to commit robbery and second-degree robbery, arising from an incident on February 20, 2009. He was also previously convicted and incarcerated on three counts of robbery in New York in 1996.

Defendant was tried on the charges related to the robbery of the PNC Bank in Cranbury where the State established that defendant entered the bank, threatened the teller both verbally and in a written note, and fled with $1,266.

A-4592-18

The jury convicted defendant of second-degree robbery, and the court dismissed the related theft charge.

At sentencing, defendant's counsel submitted a sentencing memorandum in which he acknowledged that "a sentence in the range of [eight] years with [eighty-five percent] parole ineligibility would be appropriate." On November 29, 2011, the judge sentenced defendant to an eight-year term of imprisonment on the robbery conviction, finding applicable aggravating factors three, the risk that defendant will commit another offense, N.J.S.A. 2C:44-1(a)(3); six, the extent of defendant's prior criminal record and the seriousness of the offenses of which defendant has been convicted, N.J.S.A. 2C:44-1(a)(6); nine, the need for deterring defendant and others from violating the law, N.J.S.A. 2C:44-1(a)(9); and eleven, the imposition of a fine, penalty, or order of restitution without also imposing a term of imprisonment would be perceived by defendant or others merely as part of the cost of doing business or as an acceptable contingent business or operating expense associated with the initial decision to resort to unlawful practices, N.J.S.A. 2C:44-1(a)(11). With respect to aggravating factor eleven, the judge noted, however, that "even if I were to only consider three, six, and nine, the aggravating factors substantially outweigh any mitigating factors."

5

The judge also informed defendant that "[s]ince this is a NERA offense, you have a three-year [period] of parole supervision."  Similarly, the resulting December 6, 2011 Judgment of Conviction provided that "[d]efendant is committed to the [c]ustody of the Commissioner of the Department of Corrections for a period of eight (8) years, pursuant to NERA, with three (3) years of parole supervision."

Defendant pled guilty to second-degree robbery with respect to the Somerset County charge and was sentenced on February 10, 2012.  The judge in that case imposed a seven-year sentence subject to NERA and ordered the sentence to run concurrently to defendant's sentence for the robbery of the Cranbury PNC Bank.[1]

On March 1, 2012, defendant entered an open plea on all charges in the remaining Middlesex County indictments.  At the plea hearing, the judge engaged in the following colloquy with defendant:

> Court:  Listen, NERA, . . . what's the sting of NERA?
>
> Defendant:  No Early Release Act.
>
> Court:  Yeah, all right, so what's really bad about that
> law for defendants?

---

[1]  The record does not include a copy of the JOC related to defendant's Somerset County conviction or the sentencing transcript.

A-4592-18

Defendant:  I have to do a mandatory [eighty-five] percent of my time with three[-]year parole supervision.

Defendant also stated that his plea was not predicated on any promises and acknowledged that because he was entering an open plea he was "trust[ing] the judge to give [him] . . . the right sentence."  Defendant then provided a factual basis in which he admitted that he conspired to rob each bank with his co-defendant, who entered the bank, handed the teller a threatening note, and obtained over $500, while defendant served as the getaway driver.  The judge questioned defendant about his sentencing exposure, to which he responded, "I figured [forty] years.  I'm extended to a [twenty] on extended term and then a [ten] and a [ten]."

In his plea forms, defendant responded "yes" to the question "[d]id you enter a plea of guilty to any charges that require a mandatory period of parole ineligibility or a mandatory extended term?"  In the margin, defendant wrote "robbery [second] deg [three times ten] yrs NERA."  He then filled in blanks indicating that "the minimum mandatory period of parole ineligibility is [twenty-five] years and [six] months," and that "the minimum mandatory extended term is [sixty] years and [zero] months."

7

Defendant further answered "yes" to the question "[d]o you understand that if you have pleaded guilty to, or have been found guilty on other charges, or are presently serving a custodial term and the plea agreement is silent on the issue, the court may require that all sentences be made to run consecutively?" Defendant also indicated that his guilty plea was not predicated on any promises from "the prosecutor, [his] defense attorney, or anyone else." Finally, defendant filled out a supplemental NERA plea form where he answered "yes" to a question asking if he understood that "because of [his] plea of guilty . . . [he] will be required to serve [eighty-five] percent of the sentence imposed . . . before [he] will be eligible for parole."

On April 22, 2012, defense counsel submitted a sentencing memorandum in which he noted that with respect to the Cranbury PNC Bank robbery, defendant "received eight years with [eighty-five percent]." Defense counsel also acknowledged that the State "submitted a motion [seeking] an extended term." Counsel further conceded that an "extended term in this matter is required by statute and the [d]efendant understands his position in relation to that statutory requirement."

On July 23, 2012, the judge sentenced defendant with respect to the charges in the three outstanding indictments. He merged the conspiracy and

theft charges into the second-degree robbery charge, and sentenced defendant on the robbery charges alone. Specifically, the judge sentenced defendant to a fifteen-year extended term of imprisonment for the robbery of the PNC Bank in North Brunswick and imposed seven-year terms with respect to the East Brunswick TD Bank and North Brunswick Provident Bank robberies. The judge also ordered that each sentence run consecutive to one another and to defendant's previously imposed sentences related to the Cranbury PNC Bank and Somerset County robberies.

The judge explicitly informed defendant "that's a [eighty-five] percent NERA offense, and there will be three years of parole supervision." As noted, however, the resulting July 26, 2012 Judgment of Convictions as it related to these offenses failed to contain any reference to NERA.

In reaching its sentencing decision, the judge found applicable aggravating factors three, six, nine, and eleven, and rejected defendant's request to apply multiple mitigating factors including mitigating factor four. N.J.S.A. 2C:44-1(b)(4) ("There were substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense"). The judge also determined that "the aggravating factors substantially outweigh[ed] the mitigating factors."

As to aggravating factor eleven, the judge explained that it did "not place a lot of weight on . . . factor eleven," stating that "the law tells us where there is . . . a presumption of incarceration, as there is here, that factor often is not even to be considered." Regarding mitigating factor four, the judge rejected defendant's argument for mitigation based on his drug dependency. The judge reasoned that "there is case law specifically telling us that drug use is not excused conduct," and, although defendant used the stolen money for drug use and "may have been under the influence at the time", he concluded under the circumstances of defendant's crimes "it is not an excuse, nor is it a mitigating factor."

With respect to the imposition of an extended term related to the North Brunswick PNC Bank robbery, the State requested "an acknowledgement from the defense that the factual predicate and legal predicates have been met for the mandatory extended term in this case." Defense counsel responded "I have indicated that in my sentencing memo . . . we cannot argue with that. It's statutorily required and there's no disputing that fact. We were aware of that, judge, when we put the plea through." Thereafter, the judge, after considering defendant's age and the aggravating factors, decided that it was "appropriate to sentence [him] within the midrange of the extended term."

A-4592-18

Finally, regarding the decision to impose consecutive sentences, both defense counsel and the State discussed State v. Yarbough, 100 N.J. 627 (1985). Defense counsel requested that the court apply the sentences concurrently but noted that "Yarbough is probably going to allow [the court] to say otherwise." In arguing for consecutive sentences, the State asserted that defendant committed "separate and distinct offenses" and "as far as the implementation of . . . Yarbough, [the sentences] must be consecutive." The judge agreed and determined under the circumstances of defendant's crimes, consecutive sentences were "consistent with . . . Yarbough" which contemplated "separate sentences for separate offenses," and "if there is an option for this court to choose, I would choose consecutive sentences for [defendant]."

As best as we can discern from the limited record provided, defendant initially filed two notices of appeal with respect to his convictions related to the Cranbury PNC Bank, North Brunswick Provident Bank, East Brunswick TD Bank and North Brunswick PNC Bank robberies, but later withdrew them, resulting in our entry of dismissal orders in 2013. Although defendant failed to include in the record those notices of appeal, any documentation supporting the withdrawal of those appeals, or our dismissal orders, his appellate counsel submitted a certification in support of defendant's application to file the

withdrawn appeals as within time, <u>see</u> p. 13, infra, which attested to certain of these facts.

On November 24, 2015, the State sent a letter to the judge alerting him that it recently discovered that certain of defendant's JOCs erroneously failed to include that defendant's sentences were subject to NERA and requested the court correct the JOCs to reflect accurately defendant's sentence. The letter contained in the record indicated the State copied defense counsel on the correspondence.

On July 5, 2016, assumedly in response to the State's November 24, 2015 letter, the same judge that sentenced defendant amended each of defendant's four JOCs. As to the Cranbury PNC Bank robbery, the amended JOC amplified the statement that "[d]efendant is committed . . . for a period of eight (8) years, pursuant to NERA, with three (3) years of parole supervision" by adding "[d]efendant must complete eighty-five percent of this sentence before [he is] eligible for parole." As to defendant's three other Middlesex County convictions, the modified JOCs added explicit references to NERA by including the following language, "Defendant must serve eighty-five percent of this sentence before he is eligible for parole. Upon release from incarceration, defendant shall be subject to three (3) years parole supervision."

12

Apparently unaware that the judge had imposed consecutive sentences with attendant NERA provisions, on January 26, 2018, the New Jersey State Parole Board approved defendant's parole and scheduled his release for April 12, 2018 to a residential community program in Newark. In a March 29, 2018 letter, however, the Director of the Division of Release for the Parole Board advised defendant that his parole date was rescinded based on the sentences as reflected in the amended JOCs.

According to defendant, this was the first notice he received that the JOCs had been amended. In June 2019, defendant filed a notice of appeal and as previously referenced, a motion requesting either that his withdrawn appeals be reinstated, or that he be allowed to file his notice of appeal as within time.

In support of that application, counsel in the Office of the Public Defender stated that it contacted defendant's trial counsel who reported that he had no knowledge of the amendments. Defendant's appellate counsel did not specifically address whether defendant's trial counsel received the November 24, 2015 letter from the State.

Defendant's appellate counsel also certified that defendant filed a notice of appeal with respect to the Cranbury PNC robbery on March 7, 2012 and requested the withdrawal of his appeal on November 7, 2013. He also attested

13

that we issued a conforming dismissal order on December 5, 2013. He similarly

certified that defendant withdrew his October 12, 2012 notice of appeal related

to the East Brunswick TD Bank and North Brunswick Provident Bank robberies

on August 1, 2013, and that we issued a dismissal order related to those appeals

on September 13, 2013.[2]

On July 23, 2019, we issued an order denying defendant's request to

reinstate his withdrawn appeals and granting his request to file a notice of

appeal as within time. Our order, however, expressly limited the scope of

appeal "to issues raised by the July 5, 2016 amended judgments of conviction

and is limited to the sentences imposed by the amended judgments. . . . All

other issues were waived by defendant's withdrawal of his prior appeals."

## II.

In defendant's first point he argues that the judge erred by amending the

JOCs in 2016, and that the JOCs should be corrected to remove the NERA

requirements. Specifically, he asserts that the modifications violated his due

process rights because he had an expectation of finality in his sentence and his

---

[2] Although counsel did not certify that defendant filed a notice of appeal with respect to the North Brunswick PNC Bank robbery, the September 13, 2013 dismissal order specifically lists the indictment related to that robbery, as well as the East Brunswick TD Bank and North Brunswick Provident Bank robberies.

A-4592-18

2018 parole date, relying on Schubert and State v. Eigenmann, 280 N.J. Super. 331 (App. Div. 1995). Second, he argues that the judge erred by failing to hold a sentencing hearing prior to amending the JOCs where he had a right to be present with counsel, offer argument, and allocute. We disagree.

As the issue presented in point one involves questions of law, our review is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995). NERA provides that when imposing a sentence of incarceration for certain enumerated crimes, the court "shall fix a minimum term of [eighty-five percent] of the sentence imposed, during which the defendant shall not be eligible for parole." N.J.S.A. 2C:43-7.2(a). A conviction for robbery triggers the mandatory imposition of a sentence subject to NERA. N.J.S.A. 2C:43-7.2(d)(9). Sentencing a defendant convicted of robbery without imposing NERA requirements renders a sentence illegal. See N.J.S.A. 2C:43-7.2; State v. Kearns, 393 N.J. Super. 107, 113 (App. Div. 2007) ("Because the NERA period of parole ineligibility was compulsory, the sentence imposed was illegal. It is, therefore, subject to correction at any time."); State v. Johnson, 376 N.J. Super. 163, 170 (App. Div. 2005) (finding that "defendant's sentence is illegal" where the court failed to impose mandatory NERA requirements at sentencing).

A-4592-18

It is well-settled that courts can correct errors in sentencing without violating a defendant's fundamental rights. Over fifty years ago, our Supreme Court held in State v. Matlack that such errors may be corrected under the Rules. 49 N.J. 491, 501-02 (1967). Specifically, the Court stated that "[n]o fundamental right of defendant will be violated if an inadvertent clerical-type error is corrected, and he receives the sentence which the trial judge intended him to receive." Id. at 502.

Rule 1:13-1 is in accord and provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative on the motion of any party, and on such notice and terms as the court directs, notwithstanding the pendency of an appeal.
>
> [emphasis added.]

Similarly, Rule 3:21-10(b)(5) provides that an order "correcting a sentence not authorized by law" "may be entered at any time." See also State v. Acevedo, 205 N.J. 40, 47 n.4 (2011) ("a truly 'illegal' sentence can be corrected 'at any time.'" (citing R. 3:21-10(b)(5), R. 3:22-12)). Notably, in Johnson, we remanded "for amendment of the judgement of conviction to include" mandatory NERA requirements and stated that "[t]his correction of defendant's illegal sentence does not offend well-established principles of double jeopardy. An

A-4592-18

illegal sentence may be corrected at any time because a defendant has no expectation that an illegal sentence is final."  376 N.J. Super. at 170.

Further, contrary to defendant's contention, amending a judgment of conviction to conform to the court's oral sentencing ruling does not require resentencing, defendant's presence, or notice in all instances.  In State v. Pohlabel, we explained that "where there is a conflict between the oral sentence and the written commitment, the former will control if clearly stated and adequately shown, since it is the true source of the sentence, instead of the latter which is merely the work of a clerk."  40 N.J. Super. 416, 423 (App. Div. 1956); see also State v. Abril, 444 N.J. Super. 553, 564 (App. Div. 2016) ("In the event of a discrepancy between the court's oral pronouncement of sentence and the sentence described in the judgment of conviction, the sentencing transcript controls and a corrective judgment is to be entered.").

We therefore have held that to the extent there is a conflict between the oral sentence and the written commitment, the latter "must be regarded as a clerical mistake, subject to correction by the court, with or without notice." Pohlabel, 40 N.J. Super. at 423 (emphasis added).  We reasoned that in those circumstances, "there was no occasion for notice" because the correction would not "impair[] any substantive right of the defendant," and "because it merely

conformed the official record with the oral sentence imposed in the first instance." Ibid.; see also Rule 1:13-1; State v. Randolph, 210 N.J. 330, 351 (2012) (explaining that "abbreviated resentencing proceedings for the purpose of correcting technical errors" are "ministerial act[s]" where "[n]o further proceedings [are] required." (quoting State v. Tavares, 286 N.J. Super. 610, 616 (App. Div. 1996))).

Here, the judge's actions in amending the JOCs outside of defendant's presence did not violate his due process rights because the judge merely corrected perceived clerical errors to ensure that the JOCs conformed to the sentence issued on the record. R. 1:13-1; Matlack, 49 N.J. at 501-02. Further, defendant was not entitled to a hearing on the issue because the amendments were "ministerial acts" that "merely conformed the official record with the oral sentence imposed in the first instance." Randolph, 210 N.J. at 351; Pohlabel, 40 N.J. Super. at 423.

Defendant's reliance on Schubert and Eigenmann in support of his argument that the court's amendment of his JOCS was improper because he had an expectation of finality is misplaced because those cases dealt with circumstances where the State sought to amend a defendant's sentence to include provisions not imposed at sentencing. Schubert, 212 N.J. at 300-01; Eigenmann,

280 N.J. Super. at 334-35.  Here, the amendments merely corrected the JOCs to reflect the terms imposed at sentencing, which defendant was clearly aware. Further, in <u>Schubert</u> the defendant had completed his sentence by the time the amendment was proposed.  <u>Schubert</u>, 212 N.J. at 300-01.

Second, defendant had no expectation of finality of any sentence without a NERA provision because the sentences would have been illegal without such a requirement.  Further, and contrary to defendant's contentions, the judge imposed the NERA requirements orally, and defendant understood the consequences of a NERA sentence as evidenced by the colloquy with the judge at his plea hearing and the notations on his plea forms.

### III.

In defendant's second point he argues that a remand is required under <u>State v. Kovack</u>, 91 N.J. 476, 485 (1982), because his plea was unfair.  Specifically, he contends that his reasonable expectations under the open plea were that he would receive concurrent sentences.  Second, he argues he was misinformed regarding whether the judge had discretion in imposing an extended term.

In his third point, defendant maintains the judge imposed an excessive sentence, improperly considered and weighed the aggravating and mitigating factors, misapplied the law of consecutive sentencing without proper evaluation

or explanation, and failed to consider and explicitly acknowledge the real time consequences of defendant's NERA sentence.

We decline to address these arguments as defendant was precluded from raising them by the express terms of our July 23, 2019 order limiting the issues on appeal to those "raised by the July 5, 2016 amended judgements of conviction and . . . the sentences imposed by the amended judgments." As noted, we further ordered that "[a]ll other issues were waived by defendant's withdrawal of his prior appeals."

That order circumscribed the issues before us to those raised by the court in the amended JOCs, in other words the propriety of the amplified and added NERA provisions. It did not permit plenary review of defendant's sentence without further order of our court. We note that defendant never challenged our July 23, 2019 order by way of motion for reconsideration, nor did he seek interlocutory review. See R. 2:2-2 and R. 2:8-1.

Further, defendant fails to address meaningfully the limited scope of this appeal based on our July 24, 2019 limiting order, nor does he explain how the arguments in points II and III are excepted from its terms. By raising issues related to defendant's 2011 and 2012 plea and sentencing proceedings beyond that which we permitted, defendant attempts to achieve what we expressly

precluded — plenary review of alleged errors related to his prior pleas and sentences.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4592-18