NOT FOR PUBLICATION WITHOUT THE
                    APPROVAL OF THE APPELLATE DIVISION

                                        SUPERIOR COURT OF NEW JERSEY
                                        APPELLATE DIVISION
                                        DOCKET NO.  A-3362-13T3


STATE OF NEW JERSEY,                ┌──────────────────────────┐
                                    │  **APPROVED FOR PUBLICATION** │
        Plaintiff-Respondent,       │                          │
                                    │     **March 17, 2016**       │
v.                                  │                          │
                                    │     **APPELLATE DIVISION**   │
                                    └──────────────────────────┘
SANDRA ABRIL, a/k/a SANDRA JASMINE
ABRIL, SANDRA BURGOS and SANDRA BURGESS,

        Defendant-Appellant.
_____

                Submitted February 1, 2016 — Decided March 17, 2016

                Before Judges Sabatino, Accurso and
                O'Connor.

                On appeal from Superior Court of New Jersey,
                Law Division, Middlesex County, Indictment
                Nos. 12-05-0816 and 12-05-0826.

                Joseph E. Krakora, Public Defender, attorney
                for appellant (Mark H. Friedman, Assistant
                Deputy Public Defender, of counsel and on
                the brief).

                Andrew C. Carey, Middlesex County
                Prosecutor, attorney for respondent (Brian
                Shevlin, Assistant Prosecutor, of counsel
                and on the brief).

        The opinion of the court was delivered by

ACCURSO, J.A.D.

Tried for attempted murder, defendant Sandra Abril was convicted by a jury of the lesser-included charge of second-degree aggravated assault, N.J.S.A. 2C:12-1b(1), and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. Following the verdict, she pled guilty pursuant to a negotiated agreement to a certain persons offense, N.J.S.A. 2C:39-7b. The judge granted the State's motion for a mandatory extended term and sentenced defendant to sixteen years in State prison for aggravated assault subject to the periods of parole ineligibility and supervision required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to a concurrent eight-year term on the weapon conviction. The judge sentenced defendant to a concurrent five-year term on the certain persons offense, with five years of parole ineligibility, in accordance with the plea agreement.

She raises the following arguments on appeal:

POINT I

THE TRIAL COURT ERRED PREJUDICIALLY BY FAILING TO BAR THE STATE FROM CROSS-EXAMINING DEFENDANT'S PROPOSED CHARACTER WITNESSES BY THE USE OF DEFENDANT'S PRIOR CONVICTION FOR MURDER. AT THE VERY LEAST, THE CONVICTION SHOULD HAVE BEEN SANITIZED TO PREVENT MENTION OF ANY FACTS OTHER THAN THE DEGREE OF THE PRIOR OFFENSES. (Partially Raised Below).

A-3362-13T3

POINT II

DEFENDANT'S CONVICTION AND SENTENCE ON COUNT
FIVE OF THE INDICTMENT MUST BE MERGED INTO
THE CONVICTION AND SENTENCE ON COUNT ONE.
(Not Raised Below).

POINT III

DEFENDANT'S SENTENCES MUST BE VACATED AND
THE CASE REMANDED FOR RESENTENCING.

A.  The Imposition Of A Fifteen Year Parole
Ineligibility Term On Count One Is Illegal
Because N.J.S.A. 2C:43-7d Clearly Does Not
Apply In This Case.

B.  Defendant's Aggregate Sentence Is
Manifestly Excessive and Unduly Punitive.

Having considered these arguments in light of the record and existing law, we conclude the single alleged trial error, if indeed it was error, was not clearly capable of producing an unjust result.  We agree with defendant, however, as does the State, that her conviction on the weapon charge, for which she received a concurrent eight-year term, should have been merged into her conviction for second-degree aggravated assault.  We also agree the judgment of conviction must be corrected to reflect the judge's imposition of a NERA term on the aggravated assault conviction.  Accordingly, we vacate the sentence and remand for merger of those convictions for sentencing purposes and correction of the judgment of conviction to reflect the sentence imposed.  We affirm in all other respects.

The State presented the victim to explain his relationship with defendant and the events leading up to her shooting him in their apartment on the day after Christmas in 2011. According to the victim, he and defendant were in a long-term romantic relationship that had gone stale. They had lived together in her apartment for four years. He had a long criminal record, and although he worked as a forklift driver, he described himself as a "functioning addict," regularly using both cocaine and heroin. Defendant supported him. Although he claimed they had "grown apart," he described himself as "stuck" in their relationship because he had "burnt a lot of bridges" with his family and was not able to live on his own financially.

The victim had started to secretly see another woman several months before Christmas. It was not his first affair. Defendant found out about the relationship when she found a receipt in the pocket of his pants. Although they afterward went through the motions of attempting to rekindle their relationship, the victim did not stop seeing the other woman.

On the day after Christmas, the victim took defendant's car, saying he had to go to work. He instead spent the day with his paramour. When he returned home, the couple argued. Defendant accused him of being "with that bitch" and demanded he take off the chain defendant had given him for Christmas. The

4

victim denied everything, walking away from defendant to go sit on the couch and watch television.

According to the victim, defendant stood between him and the television and pointed a gun at him while continuing to harangue him about the other woman. At some point, defendant "clicked the gun" and a bullet fell out. He said, "you clicking guns on me now? I'm outta here. I'm gone," and walked toward the bedroom to get his coat. He claimed defendant then shot him in the back, refused to call him an ambulance and instead put her hand over his mouth, saying "no ambulance." The victim claimed he pulled himself to the door and as he struggled with the locks, defendant stabbed him and snatched the chain from his neck.

The victim managed to get himself down the three flights of stairs, where he collapsed in front of the building. When police arrived and asked him what happened, he only got out his apartment number. When police went to the apartment, they found defendant and her niece, who lived on another floor of the building. The women were carrying luggage and a cat carrier and appeared to be in the process of leaving. Police detained both women and took them in for questioning. Defendant gave consent to search her apartment, where police found blood, a spent .38 shell casing, as well as a black bag with several .38 rounds,

A-3362-13T3

but no gun and no knife. They also found a .38 caliber cartridge in the rear of the apartment building near a dumpster. A shirt defendant was wearing had the victim's blood on a sleeve. Police seized the shirt but released defendant without charging her.

At the scene, two women came forward to report seeing two Hispanic males get into a taxi and take off as the victim lay bleeding on the sidewalk. The police did not pursue this lead because the next day, the victim identified defendant as the person who shot him.

Defendant did not testify. She maintained she did not shoot the victim. Her theory at trial was that police had not undertaken a thorough investigation and had failed to pursue viable leads, most notably the two Hispanic men seen fleeing the area, after the victim accused defendant of the crime. She contended the victim's story made almost no sense and contained significant factual errors, chief among them his continued insistence that he was shot in the back, although all medical evidence confirmed a gunshot wound to his chest. Defendant also emphasized the failure of investigators to locate the gun or a knife, and the improbability of her being able to dispose of those weapons in the few minutes between the shooting and officers arriving in her apartment. She maintained the victim's

6                                                    A-3362-13T3

story was incomprehensible because he was likely too "high" to know what had happened to him or to be able to report it accurately.

In the only issue defendant raises regarding her conviction, she claims the trial court erred in a mid-trial ruling relating to character witnesses she wished to call. Defendant's counsel sought to call character witnesses who would testify defendant was "a hard-working person that is responsible and dependable" and trustworthy. When the court asked whether those traits were in issue in the trial, counsel expressed the view that "when you're . . . on trial for attempted murder . . . everything is at issue." The assistant prosecutor, although expressing the view that none of those traits was at issue, asserted he should be allowed to ask any character witnesses whether they knew defendant had been convicted of murdering her husband, for which she received a thirty-year prison term in 1982.

When the judge prodded defense counsel again about the purpose of the proffered testimony, counsel replied she wanted the jury to see "there are people that think well of [defendant], and that are rooting for her." The judge, although stating it is "not the purpose of [a] character witness to show that she's got people on her side," did not exclude the

evidence.  He instead ruled defendant would not be barred from calling character witnesses, but advised, "if you introduce the testimony . . . , I think it would be permissible for the State to make inquiries [of] those witnesses as to their knowledge of your client's conviction for murder."  In light of the court's ruling, defendant did not call any character witnesses.

Defendant now argues that ruling was in error, and it deprived her of a fair trial.  We disagree.[1]

Although N.J.R.E. 404(a)(1) allows a defendant in a criminal trial to offer evidence of her good character to show she was unlikely to have committed the crimes charged, the Rule requires that the character trait evinced by the evidence must be one "pertinent" to the issues in the case.  See State v. Baluch, 341 N.J. Super. 141, 164-68, 194 (App. Div.) (holding trial court correctly refused to instruct the jury to consider testimony of defendant's friends and co-workers that she was a hard-working nurse, devoted wife and good mother, when such traits were "wholly irrelevant to any pertinent character trait

_____

[1] We note the State has not argued this decision is not reviewable because defendant chose not to call the character witnesses.  Cf. State v. Whitehead, 104 N.J. 353, 361-62 (1986) (holding a defendant need not testify at trial to preserve his right to appeal the trial court's determination that the defendant's prior convictions could be used to impeach him if he testified, declining to follow Luce v. United States, 469 U.S. 38, 42, 105 S. Ct. 460, 464, 83 L. Ed. 2d 443, 448 (1984)).  We thus assume, without deciding, that the issue was preserved.

tending to show that she had no propensity to abuse household help"), certif. denied, 170 N.J. 89 (2001). Defendant's character for being hard-working, responsible, dependable and trustworthy revealed nothing about whether she was capable of shooting a cheating boyfriend and thus was likely inadmissible. See State v. Mahoney, 188 N.J. 359, 373, cert. denied, 549 U.S. 995, 127 S. Ct. 507, 166 L. Ed. 2d 368 (2006).

Assuming for purposes of the analysis that the testimony of the proposed character witnesses related to a pertinent trait of defendant's character, thus making it admissible, we see no reason to have barred the prosecution from cross-examining the witnesses regarding the basis for their opinions as to defendant's character. The law is well settled that a criminal defendant putting in evidence of a pertinent trait of good character allows the prosecution to counter with evidence of her bad character as to the same trait. N.J.R.E. 404(a)(1); State v. Hunt, 115 N.J. 330, 369 (1989) (noting the general rule "that the prosecutor may not offer evidence of the defendant's character to support an inference about the defendant's conduct on a specific occasion unless the defendant has first produced evidence of good character").

Although the adoption of former Evidence Rule 47 ended the ability of a prosecutor to impeach the credibility of a

defendant's character witness by inquiring into the witness's knowledge of alleged criminal misconduct not evidenced by a criminal conviction, neither its successor, N.J.R.E. 405, nor N.J.R.E. 607, prohibits such impeachment when the inquiry is limited to the witness's knowledge of a defendant's criminal convictions. See State v. LaPorte, 62 N.J. 312, 319-20 (1973); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 5 on N.J.R.E. 607 (2015) ("N.J.R.E. 608 places limitations on impairment of the credibility of a defendant's character witness in a criminal proceeding. Inquiry may not be made into the witness's knowledge of the defendant's alleged criminal conduct which is not evidenced by a criminal conviction."). We thus reject defendant's argument that her proposed character witnesses could not have been impeached by the prosecutor inquiring into their knowledge of defendant's prior criminal conviction, subject, of course, to the trial judge's determination that its probative value was not substantially outweighed by the risk of undue prejudice or any of the other N.J.R.E. 403 factors. See State v. Steensen, 35 N.J. Super. 103, 106-09 (App. Div. 1955).

Defendant did not raise to the trial court her alternate argument that the judge should have sanitized her prior murder conviction if it was to be used in cross-examining her character

witnesses.  See State v. Brunson, 132 N.J. 377, 391-92 (1993);

cf. State v. Balthrop, 92 N.J. 542, 544-46 (1983) (addressing

sanitization of prior convictions of witnesses for the

prosecution); see also N.J.R.E. 404(b), 609.  Accordingly, we

review her claim under a plain error standard.  See R. 2:10-2;

State v. Angoy, 329 N.J. Super. 79, 88 (App. Div.), certif.

denied, 165 N.J. 138 (2000).

First, we note the prosecutor stated on the record that he

would treat the murder conviction on cross-examination of the

character witnesses "as if we had a Sands[2] hearing, and . . .

not specify the charge."  Second, in subsequently considering

whether the conviction could be used against defendant if she

elected to testify, the court determined the murder conviction

was not so remote as to be excluded under a Sands analysis.  It

did, however, sanitize the conviction in accordance with

Brunson, by limiting the prosecution to eliciting only the

degree of the crime and prohibiting questions as to the nature

of the crime or the length of her sentence.  Accordingly, we are

not convinced that had defendant expressed a desire to have the

conviction sanitized for purposes of the cross-examination, the

trial court would not have obliged her by entering a similar

ruling.

_____

[2] State v. Sands, 76 N.J. 127, 144 (1978).

Although no published appellate decision has addressed sanitization in this circumstance,[3] we are mindful that "[t]he Sands holding reflects [the Supreme] Court's concern about severe and unfair prejudice to a defendant from prior-conviction evidence," and the discretion the Court has reposed in the trial court to ameliorate undue prejudice by resort to a sanitization remedy. State v. Hamilton, 193 N.J. 255, 264-68 (2008); see also N.J.R.E. 403, 404(b) and 609; State v. Gillispie, 208 N.J. 59, 92 (2011). Accordingly, we hold sanitization of defendant's prior murder conviction would have been appropriate before the prosecutor was allowed to ask defendant's character witnesses about their knowledge of the conviction. Because, however, a defendant may waive the protection afforded by sanitization, Brunson, supra, 132 N.J. at 392, we decline to find the trial court's failure to sua sponte suggest sanitization in the context of impeachment of a character witness automatically constitutes reversible error. See State v. Whittle, 52 N.J. 407, 410-11 (1968); cf. State v. Williams, 219 N.J. 89, 98-99 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015) (discussing difficulty of considering

---

[3] But see State v. Campbell, 212 N.J. Super. 322 (Law Div. 1986), for a trial court undertaking a Sands analysis in the context of reputation testimony offered by a character witness for the defendant.

Confrontation Clause claim, which a defendant may choose to waive for strategic purposes, under plain error standard). In no event could we find the failure to have done so here clearly capable of producing an unjust result given this record. See State v. Macon, 57 N.J. 325, 335 (1971).

We turn next to defendant's claims regarding her sentence. We agree with defendant, as does the State, that her conviction for unlawful possession of a weapon should have been merged with her conviction for aggravated assault. See State v. Diaz, 144 N.J. 628, 636 (1996) ("When the only unlawful purpose in possessing the gun is to use it to commit the substantive offense, merger is required."). A remand is in order to correct that error.

We reject her claim that her sentence is excessive and the parole disqualifier illegal. Because defendant had a prior conviction for murder using a firearm, she was subject to a mandatory extended term upon her conviction for second-degree aggravated assault while using a firearm. See N.J.S.A. 2C:44-3d. Accordingly, defendant could lawfully be sentenced within a range of between five and twenty years. See N.J.S.A. 2C:43-7a(3); State v. Pierce, 188 N.J. 155, 169 (2006) ("the range of sentences, available for imposition, starts at the minimum of the ordinary-term range and ends at the maximum of the extended-

term range"). Defendant's sixteen-year term plainly falls within the statutory range.

Although defendant maintains the court imposed an illegal minimum term of fifteen years, the sentencing transcript belies her claim. The court stated clearly on the record that defendant's sixteen-year term was subject to NERA, and thus that she must serve eighty-five percent before becoming eligible for parole. The judgment of conviction, however, states defendant is to serve a minimum term of fifteen years during which she is ineligible for parole pursuant to N.J.S.A. 2C:43-7d. That statute addresses minimum terms for crimes committed with a machine gun or assault firearm pursuant to N.J.S.A. 2C:43-6g, and thus the reference is clearly an error.

In the event of a discrepancy between the court's oral pronouncement of sentence and the sentence described in the judgment of conviction, the sentencing transcript controls and a corrective judgment is to be entered. State v. Rivers, 252 N.J. Super. 142, 147 n.1 (App. Div. 1991). Accordingly, a remand is also required to conform the judgment of conviction to the minimum term sentence the court imposed. As the judgment of conviction likewise erroneously notes a finding of aggravating factor one, which the sentencing transcript confirms the court

explicitly did not find, the judgment must be corrected for that error as well.

We reject defendant's claim that her sentence is excessive. Defendant was convicted of murdering her husband in 1982 and sentenced to a maximum term of thirty years. Within three years of her release from State prison, she was convicted of stabbing her then boyfriend with a knife, for which she received a five-year probationary term.[4] The shooting resulting in this conviction followed within six years. We are satisfied the judge's findings and balancing of the aggravating and mitigating factors are supported by adequate evidence in the record, and the sentence is neither inconsistent with sentencing provisions of the Code of Criminal Justice nor shocking to the judicial conscience. See State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Bieniek, 200 N.J. 601, 608 (2010); State v. Cassady, 198 N.J. 165, 180-81 (2009).

We affirm defendant's conviction and remand her sentence for merger of her conviction for unlawful possession of a weapon with her conviction for aggravated assault and correction of the

---

[4] This conviction was not included in the Sands analysis at trial because of some confusion surrounding its disposition. The prosecutor mistakenly believed it had been downgraded to a disorderly persons offense. See State v. Parker, 216 N.J. 408, 423 (2014) (noting only indictable offenses which are the subject of valid convictions may be used for purposes of impeachment).

judgment of conviction to reflect the sentence imposed in accordance with this opinion. We affirm the sentence in all other respects. We do not retain jurisdiction.

Affirmed, and remanded for entry of an amended judgment.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3362-13T3