# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3484-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

T.F.,[1]

     Defendant-Appellant.

_____

Submitted February 3, 2021 – Decided July 23, 2021

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 18-02-0682 and 18-11-3569.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the briefs).

---

[1]  We use initials and pseudonyms to identify the parties and to protect the confidentiality the victims.  See R. 1:38-3 (c)(9) and (d)(10).

Appellant filed a pro se supplemental brief.

PER CURIAM

Following a bifurcated jury trial, defendant T.F. was convicted of burglary, aggravated assault, terroristic threats, child endangerment, and weapons offenses for kicking in the door of his children's home in the pre-dawn hours of Christmas Day and threatening to kill their mother, A.E. (Amy), at gunpoint. During the multiple-day trial, the State presented the testimony of six witnesses including Amy, who vacillated in her account of the events and Amy's twenty-year-old sister, D.E. (Dina), who steadfastly inculpated defendant. The State also moved into evidence various exhibits, including a letter and a CD containing four telephone calls from defendant to Amy while he was in jail awaiting trial, attempting to convince her to drop the charges against him. Thereafter, the same jury convicted defendant of certain persons not to possess weapons. After denying defendant's motion for a new trial and the State's motion for a discretionary extended term, the trial judge sentenced defendant to an aggregate forty-one-year prison term, with a fifteen-year parole disqualifier. This appeal followed.

In his counseled brief, defendant raises the following points for our consideration:

A-3484-18

## POINT I

THE BURGLARY CONVICTION SHOULD BE REVERSED BECAUSE DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE TRIAL COURT'S FAILURE TO DEFINE "A CRIME OF DOMESTIC VIOLENCE," WHICH WAS THE OFFENSE THE STATE ALLEGED THAT DEFENDANT INTENDED TO COMMIT WHEN HE ENTERED THE APARTMENT WITHOUT PERMISSION. U.S. Const. amend. XIV; N.J. Const. art. I, ¶¶ 1, 9, & 10.
(Not raised below)

## POINT II

THE CONVICTION FOR UNLAWFUL POSSESSION OF A HANDGUN SHOULD BE REVERSED BECAUSE DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY THE TRIAL COURT'S ERRONEOUS JURY CHARGE OMITTING INSTRUCTION ON "MERE PRESENCE," WHERE THAT WAS PRECISELY DEFENDANT'S DEFENSE TO THE CHARGE. U.S. Const. amend. XIV; N.J. Const. art. I, ¶¶ 1, 9, & 10.
(Not raised below)

## POINT III

THE CONVICTIONS SHOULD BE REVERSED DUE TO PROSECUTORIAL ERROR IN SUMMATION WHERE THE STATE MISREPRESENTED DEFENDANT'S STATEMENTS AS ADMISSIONS OF GUILT. U.S. Const. amend. XIV; N.J. Const. art. I, ¶¶. 1, 9, & 10.

POINT IV

[DEFENDANT'S] THIRTY-FOUR-AND-A-HALF-YEAR [SIC] SENTENCE CANNOT BE JUSTIFIED FOR THE CONVICTED CRIMES AND MUST BE REDUCED.

In his pro se brief, defendant raises the following additional arguments, which we renumber for the reader's convenience:

POINT [V]

THE STATE'S ARGUMENT DOES NOT RISE TO THE STANDARD LEVEL OF PLAUSIBILITY AS REFLECTED IN THE STATE'S COERCIVE FEARMONGERING TACTICS TO GET A[MY] TO TESTIFY AGAINST HER WILL TANTAMOUNT TO PREJUDICIAL MISCONDUCT, NECESSITATING REVERSAL[.] U.S. Const. amend. XIV; N.J. Const. art. I, 9, 10.
(Not raised below)

POINT [VI]

THE STATE SUBSTANTIALLY PREJUDICED DEFENDANT'S FUNDAMENT[AL] RIGHT TO HAVE A FAIR TRIAL BY PRESENTING THE TESTIMONIES OF A[MY] AND D[INA] WHICH SHOULD HAVE BEEN IMPEACHED FOR THE NUMEROUS INCONSISTENTICES [IN] THE RECORD.
(Not raised below)

POINT [VII]

DEFENDANT RECEIVED AN EXCESSIVE SENTENCE WHERE THE COURT FAILED TO

4                                              A-3484-18

FIND ANY MITIGATING FACTORS AND THAT FAILED TO EQUATE THE INCONSISTENT TESTIMONY/EVIDENCE ALONG WITH THE CONTEXT OF THE CRIMES ALLEGED AND IT MUST [BE] REDUCED IN LIGHT OF THE NEW JERSEY CRIMINAL SENTENCING & DISPOSITION COMMISSION'S BILL FOR YOUTHFUL OFFENDERS DURING SENTENCING.
(Not raised below)

For the reasons that follow, we affirm defendant's convictions and remand for resentencing.

I.

By all accounts, defendant and Amy had been in an on-again, off-again relationship for a few years. Two children were born of the union; they were one year old and five months old at the time of the incident. According to Amy, on Christmas Eve 2017, defendant and Amy were no longer living together in her Newark apartment, but went shopping for the children's presents. An argument ensued on their drive back to Amy's home after defendant looked at Amy's cellphone to see whether she "were seeing any other guys." Amy denied defendant's request to return later to visit with her and their daughters.

Nonetheless, around 10:30 or 11:00 p.m., defendant knocked on Amy's door. Amy told Dina, who was visiting, to be quiet but Dina eventually told Amy "to let him in." Defendant entered the apartment, "got comfortable and

5

turned on the T.V." Dina testified that "it wasn't a good vibe that [Amy] was getting so she wanted him to leave" but "he didn't want to." Dina then called the police who escorted defendant out of the apartment. According to Amy, however, defendant left the apartment at her request without protesting or police intervention.

In any event, it is undisputed that defendant returned to Amy's home around midnight. According to Amy and Dina, defendant knocked on the door and texted the sisters to open it. When they refused, defendant kicked in the door and entered the rear bedroom where the sisters and children were located. Defendant appeared "high"; his eyes were red, and he was angry. He pointed a handgun at Amy, who was holding the baby. Defendant threatened to kill Amy and himself. Dina, who was on the phone with her boyfriend at the time, "got scared" and hid in the closet. Dina asked her boyfriend to call the police, but he did not know Amy's address. Defendant then entered the closet, took Dina's cellphone, and demanded Amy's cellphone. Amy refused but eventually acquiesced in defendant's demands. Dina remained in the closet for hours with the older child.

In the meantime, defendant closed the door to the bedroom and would not let Amy and the baby leave the room. Defendant "just kept screaming and

A-3484-18

[Amy] tried to talk to him" to calm him down but he was in a "state of anger." About an hour later, defendant opened the door but continued to hold the gun. In an effort to defuse the situation, Amy convinced defendant to give her the gun in return for the baby. Amy tried for hours to convince defendant to leave the apartment to no avail. Eventually, defendant fell asleep on the living room couch, and Amy placed the gun on the fire escape.

Dina called the police around 6:00 a.m.; defendant was arrested; and the gun was retrieved from the fire escape. While incarcerated, defendant called Amy at least four times, attempting to convince her not to cooperate with the State. He also sent Amy a letter, directing her to change her telephone number so the prosecutor could not call her.

After the State rested, defendant testified to a vastly different version of the events. Defendant contended he was living with Amy in December 2017. He claimed the door to the apartment had been broken in November when Amy forgot her key and "pushed a little too hard" as she tried to open the door with her shoulder. Defendant acknowledged he argued with Amy and refused to leave when she told him to "get out." He said he went to sleep and when he awoke, he was handcuffed. Defendant denied all charges and claimed he did not see the gun until the police recovered it.

7

Defendant acknowledged he made several calls to Amy from the jail, "just to talk to [his] kids, speak to [Amy], see what's going on with their living arrangements . . . ." When his attorney asked whether defendant ever told Amy not to cooperate with the State, defendant responded: "Not exactly in that context" but he told Amy the State could not remove the children from her home if she declined to testify before the grand jury as "they" had threatened. Defendant said dropping charges "was already her mindset" when they spoke. On cross-examination, however, defendant acknowledged that during his arraignment, the judge ordered defendant not to have any contact with Amy, which included telephone calls and letters.

Defendant was charged in a twenty-count Essex County indictment with: second-degree burglary, N.J.S.A. 2C:18-2, "and a crime of [d]omestic [v]iolence," N.J.S.A. 2C:25-19 (count one); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count two); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three); fourth-degree aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1(b)(4) (count four); third-degree terroristic threats, N.J.S.A. 2C:12-3(b), "and a crime of [d]omestic [v]iolence," N.J.S.A. 2C:25-19 (counts five and twenty); fourth-degree theft, N.J.S.A. 2C:20-3(a) (count six); third-degree theft, N.J.S.A. 2C:20-

3(a) (count seven); third-degree criminal restraint, N.J.S.A. 2C:13-2(b) (counts eight, nine, ten, and eleven); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts twelve and thirteen); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count fourteen); third-degree witness tampering by engaging in conduct to cause the witness to withhold testimony, N.J.S.A. 2C:28-5(a)(3) (counts fifteen and seventeen); and third-degree witness tampering by engaging in conduct to obstruct an official proceeding, N.J.S.A. 2C:28-5(a)(5) (counts sixteen, eighteen, and nineteen). After counts six, eight through eleven, and twenty were dismissed, defendant was found guilty as charged of the remaining counts, except seven and eighteen. The same jury thereafter found defendant guilty of certain persons not to possess weapons, N.J.S.A. 2C:39-7(b), as charged in a separate indictment.

## II.

For the first time on appeal, defendant contends the trial judge incorrectly instructed the jury that the predicate offense for the burglary charge was "a crime of domestic violence" but failed to define that term. Defendant's argument mischaracterizes the record.

At or before the charge conference on January 15, 2019, the judge provided counsel with a copy of the written draft jury charge and reviewed the

A-3484-18

charges with counsel. Following summations, the judge provided counsel with the revised jury charge and verdict sheet and reviewed the revisions with counsel. The judge also sua sponte indicated he would strike the "domestic violence" language from the indictment when reading the burglary charge to the jurors.

In that regard, the judge stated: "I've been seeing these indictments from the prosecutor's office, and this has actually been a recent thing. Essentially . . . the State is asking . . . for an extra element that [it] must prove beyond a reasonable doubt. Domestic violence is not mentioned in [N.J.S.A.] 2C:18-2." The prosecutor agreed with the judge's suggestion; defense counsel refrained from comment.

Nonetheless, during the final jury instructions, the judge included the domestic violence language when reading the indictment as to the burglary charge:

> Count one, burglary. The first count in the indictment charges . . . defendant with committing the crime of burglary. It reads as follows. . . . [Defendant] on the 25th of December 2017, in the City of Newark . . . entered the premises . . . which was not at the time open to the public and which he was not . . . licensed or privileged to enter. And in the course of committing the offense was armed with, or displayed what appeared to be a deadly weapon against A[my], the defendant's

children's mother, contrary to New Jersey Statute 2C:18-2 and <u>a crime of domestic violence.</u>

[(Emphasis added).]

The trial judge then read the pertinent portion of the burglary statute. Relevant to defendant's argument on appeal, the judge stated:

> A . . . person is guilty of burglary if for the purpose to commit an offense therein the person enters a structure or separately secured or occupied [a] portion thereof unless the structure was at the time open to the public, . . . or the person is licensed or privileged to enter.
>
> In order for you to find . . . defendant guilty of the crime of burglary the State must prove beyond a reasonable doubt the following elements. One, . . . defendant entered the structure . . . without permission. Two, that defendant did so with the purpose to commit an offense therein.
>
> . . . .
>
> Purpose to commit an offense, means that a defendant intended to commit an unlawful act inside the structure. <u>The unlawful acts alleged intended are set forth in the counts in the indictment</u>.

[(Emphasis added).]

The judge went on to read the remaining counts in the indictment, which included possession of a weapon for an unlawful purpose. In that context, the judge instructed the jury that "the State contends . . . defendant's unlawful purpose [in] possessing the firearm was to threaten or harm A[my]."

11

We begin our consideration of defendant's contention by acknowledging "[a]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)). "Thus, the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'" Ibid. (alteration in original) (quoting Reddish, 181 N.J. at 613). "A proper explanation of the elements of a crime is especially crucial to the satisfaction of a criminal defendant's due process rights." State v. Ambroselli, 356 N.J. Super. 377, 386 (App. Div. 2003); see also State v. Burgess, 154 N.J. 181, 185 (1998).

However, a jury charge "must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005). The appropriate test to apply "is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v. McKinney, 223 N.J. 475, 496 (2015) (quoting State v. Jackmon, 305 N.J. Super. 274, 299 (App.

12

Div. 1997)).  "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant."  Id. at 495 (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).

When a defendant fails to object to an error regarding jury charges, we review for plain error.  R. 1:7-2; see also State v. Funderburg, 225 N.J. 66, 79 (2016).  "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'"  Funderburg, 225 N.J. at 79 (quoting R. 2:10-2).  "The mere possibility of an unjust result is not enough."  Ibid.  We will only reverse, if the error is "sufficient to raise 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'"  Ibid. (alteration in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)).  "[P]lain error requires demonstration of '[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result.'"  State v. Burns, 192 N.J. 312, 341 (2007) (second alteration in original) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

Applying these guiding principles to defendant's belated argument, we agree that the trial judge erred by including "a crime of domestic violence" in the burglary charge, when reading the indictment. Nonetheless, we discern the judge's oversight was not capable of producing an unjust result here, where the charge was otherwise accurate and fairly stated the elements of the offense that the State was required to prove beyond a reasonable doubt.

Contrary to defendant's contention, the judge never "advised the jury that it had to determine whether defendant intended to commit 'a crime of domestic violence'" when he entered Amy's apartment. Instead, the judge instructed the jury that the unlawful acts alleged by the State were "set forth in the counts in the indictment." Accordingly, when read as a whole, the judge's error was not "clearly capable of producing an unjust result." R. 2:10-2.

## III.

We turn next to defendant's argument that the judge erroneously omitted the mere presence section of the unlawful possession of a handgun jury charge, thereby requiring reversal of his conviction for that offense and possession of a defaced firearm. Because defendant did not object to the jury instruction at trial, we again review his newly-minted challenges through the prism of the plain error standard. Ibid.

14

During the initial charge conference, the judge inquired as to whether it was necessary to charge constructive possession and agreed to do so following defense counsel's comment, "there's been some testimony from A[my] and D[ina] that the firearm was found on the fire escape during the time that . . . defendant was sleeping." Defense counsel did not, however, request that the judge include the mere presence section of the jury charge. Although given another opportunity to object to any of the judge's instructions before he released the jury to begin its deliberations, defendant raised no objection to the judge's instructions.

Nonetheless, the judge twice issued the constructive possession charge: initially when instructing the jury that burglary was "elevated" if during commission of the offense "the person is armed with or displays what appears to be a deadly weapon"; and again when instructing the jury on unlawful possession of the handgun. In so doing, the judge twice informed the jury the State was required to prove defendant was "aware of" the handgun's presence and had the "intent to exercise control over it." State v. Randolph, 228 N.J. 566, 592 (2017).

In Randolph, our Supreme Court held the trial court erred in a drug possession prosecution by denying defendant's request to issue a mere presence

instruction. Id. at 590-93. Unlike the present matter, the State's theory was that the defendant constructively possessed narcotics in an apartment from which he had fled. Id. at 590. The defendant in that case was charged with drug possession and distribution offenses. Id. at 573.

The Court stated that while the mere presence instruction was not included in the model jury charge on possession, "[n]o constraint barred the trial court from giving the 'mere presence' charge, and the better course would have been to give the charge to disabuse the jury of any possible notion that a conviction could be based solely on defendant's presence in the building." Id. at 592. However, the Court concluded "[t]he charge, as a whole, sufficiently informed the jury — without using the words 'mere presence' — that defendant's presence . . . standing alone, would be insufficient to establish guilt." Ibid.

In the present matter, the handgun was recovered by police after Dina reported defendant had threatened Amy with the gun. Both Amy and Dina testified that defendant entered the apartment armed with the handgun. This was not a scenario in which police responded to the apartment on a general report of a gun found on the bedroom fire escape and observed three people seated on the living room couch upon their arrival. Instead, both sisters advised police that the handgun belonged to defendant – and he unlawfully used that weapon by

16

breaking in the door to the apartment and pointing the gun at Amy. Accordingly, in addition to gun possession charges, defendant also was charged with non-possessory charges of burglary and aggravated assault.

Nonetheless, we recognize defendant denied all charges, including possession of the handgun. Further, seven months before the present trial, the Supreme Court Model Criminal Jury Charge Committee tailored the charge on unlawful possession of a handgun to include mere presence, "if [a]ppropriate," following the definition of constructive possession. Model Jury Charges (Criminal), "Unlawful Possession of a Handgun (Second Degree)" (rev. June 11, 2018). As such, "the better course would have been to give the charge to disabuse the jury of any possible notion that a conviction could be based solely on defendant's presence in" Amy's apartment. Randolph, 228 N.J. at 592.

We therefore conclude the trial judge mistakenly failed to issue the complete charge. However, that mistake did not constitute plain error under the circumstances presented here, where the judge twice included in his final instructions the definition of constructive possession. See State v. Hyman, 451 N.J. Super. 429, 455-57 (App. Div. 2017). When viewed in its entirety, the court's charge on possession did not permit the jury to find defendant guilty based on his mere presence in the apartment. As the Court concluded in

17

Randolph, "giving the charge would have done no harm and possibly would have been of some benefit," but the absence of the mere presence charge did not deny the defendant a fair trial under the facts presented. 228 N.J. at 593.

IV.

Defendant also challenges two comments made during the prosecutor's summation. Following the jury's guilty verdict, defendant ordered transcripts of the jail calls, which differed in some respects from the transcripts produced by the State. Prior to sentencing, defendant moved for a new trial, arguing the prosecutor misrepresented the statements defendant made during his phone calls to Amy. Defendant contended the post-trial transcripts were newly-discovered evidence that demonstrated the prosecutor mischaracterized his statements thereby entitling him to a new trial. Notably, before the prosecutor had replayed the calls during her summation, defense counsel objected only because he was "concerned" she intended to read the transcripts; and not because the defense claimed the transcripts were erroneous.

Emphasizing the calls and not the transcripts were admitted in evidence – nor shown to the jury as demonstrative aids when they listened to the calls – the trial judge orally denied defendant's motion, issuing a decision from the bench. In doing so, the judge reasoned the prosecutor's argument was fair comment on

the evidence. The judge also noted that the audio tapes had been provided in discovery and the court conducted a pretrial <u>Driver</u> hearing,[2] wherein the recordings were authenticated. According to the judge: "The jury heard . . . the audio tapes, and it was up to the jury to give that evidence the weight that [it] felt it deserved, and accept it or reject it or accept it in part."

On appeal, defendant renews his argument that the prosecutor's comments were out of bounds. Defendant's first claim of alleged misconduct pertains to his January 24, 2018 call to Amy, which the prosecutor replayed for the jury during her summation:

> DEFENDANT: Don't tell them you've been talking to me.
>
> AMY: Well, they know.
>
> DEFENDANT: But as far as like, . . . I'll let you know what the motion [is] and the correct way how to go about it, and . . . the only thing you be having to do is like they might [ask you]: "You not going to pursue nothing, right?" They going to be . . . they can't do shit. They can't do nothing without you. <u>The only thing is I just had a hammer</u> . . . .
>
> [(Emphasis added).]

---

[2] <u>State v. Driver</u>, 38 N.J. 255 (1962). Following a <u>Driver</u> hearing, the court determines the admissibility of a sound recording, considering several factors including whether any changes, additions, or deletions have been made to the recording. <u>Id.</u> at 287.

<span>A-3484-18</span>

After an exchange in which Amy indicated she feared the State would incarcerate her if she did not testify, the prosecutor paused the CD containing the call, stating to the jury:

> I want to draw your attention to a couple of things you just heard. [D]efendant just said at the beginning: "Okay, don't tell the prosecutor you're talking to me. You know, the only problem here is I had the hammer." That's the gun. Detective Ferrer tested that hammer. It's just the slang term for gun. You heard testimony from A[my] and D[ina], they never talked to [defendant] about him having a tool, a hammer. They talked about him having a gun, and he's just talked about him having a gun. Unlawful possession of a weapon. Guilty.

Referencing the post-trial transcript of the call,[3] defendant contends he merely stated: "I only think I just ha[d] a hammer." Acknowledging "[t]his interpretation might be confusing," defendant nonetheless contends it is consistent with Amy's testimony that defendant was intoxicated at the time of the offense.

Secondly, he argues the post-trial transcription of a portion of the January 25, 2018 phone call differed significantly from the prosecutor's interpretation. According to the trial transcript of the call, defendant stated: "(Indiscernible) like the violent . . . you made it violent is that I pointed [the gun] at you, so they

---

[3] The post-trial transcripts were not provided on appeal.

gave it an aggravated assault, so that made it violent. That's basically what's holding me [in jail]." Accordingly, the prosecutor commented:

> Oh, and then he also says what made it violent was I pointed it at you. "Yeah, yeah, don't worry about that, I pointed a gun at you as you held our baby, but you know, it's all good." Why doesn't he say to her: "Why don't you tell them that I didn't point it?" Why doesn't he say, "Why [sic] don't testify at grand jury" that it didn't happen? Because it did.

Defendant instead claims the post-trial transcription states: "It ain't nothing to worry about on your end. I just was like the violent . . . what made it violent <u>you said I pointed it at you</u>, so they gave me the aggravated assault, so that made it violent." (Emphasis added). Defendant argues he did not admit pointing the gun at Amy but rather "he was only saying that A[my]'s allegation that he pointed the gun was the reason the offense was regarded as violent, which prevented his release pre-trial."

New Jersey courts have long recognized prosecutors "are afforded considerable leeway in making opening statements and summations." <u>State v. Williams</u>, 113 N.J. 393, 447 (1988). They may even do so "graphically and forcefully." <u>State v. Pratt</u>, 226 N.J. Super. 307, 323 (App. Div. 1988).

Nonetheless, "the primary duty of a prosecutor is not to obtain convictions but to see that justice is done." <u>State v. Smith</u>, 212 N.J. 365, 402-03 (2012). "A

prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'" State v. Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting Williams, 113 N.J. at 447-48).

Even if the prosecutor exceeds the bounds of proper conduct, that finding does not end our inquiry "because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" State v. Smith, 167 N.J. 158, 181 (2001) (quoting State v. Frost, 158 N.J. 76, 83 (1999)). "To justify reversal, the prosecutor's conduct must have been clearly and unmistakably improper, and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575 (1999) (internal quotation marks omitted); see also State v. Nelson, 173 N.J. 417, 460 (2002).

Having considered defendant's contentions in view of these principles, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons set forth by the trial

judge in his well-reasoned oral decision denying defendant's motion for a new trial.

V.

Defendant argues his sentence is excessive. In his counseled brief, he contends the trial judge improperly imposed consecutive sentences here, where most of the offenses constituted "a single, continuous episode." For the first time on appeal, defendant in his pro se brief argues the judge failed to: consider the impact of his "immaturity and youthful ignorance"; find mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment would entail excessive hardship to defendant or his dependents); and sentence defendant one degree lower, ostensibly on the second-degree charges. For the reasons that follow, we remand for resentencing.

Citing defendant's criminal and juvenile record, the trial judge found aggravating factors three (the risk that defendant will commit another offense), six (the extent of defendant's prior criminal record and the seriousness of the offenses for which he has been convicted), and nine (the need for deterring defendant and others from violating the law). N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge found no mitigating factors and that the "preponderance of

23

aggravating factors weigh[e]d in favor of a custodial term toward the higher end of the [sentencing] range."

The judge then ordered the appropriate merger on count two of Indictment No. 18-11-3569, and imposed sentence as follows:

- Burglary (count one):  ten years' imprisonment, with an eight-year-and-six-month period of parole ineligibility under the No Early Release Act, N.J.S.A. 2C:43-7.2;

- Unlawful possession of a weapon (count two):  eight years' imprisonment, with a forty-two-month period of parole ineligibility under the Graves Act, N.J.S.A. 2C:43-6(c), concurrently to count one;

- Aggravated assault (count four):  eighteen months' imprisonment, with an eighteen-month parole disqualifier under the Graves Act, <u>consecutively</u> to count one;

- Terroristic threats (count five):  five years' imprisonment, <u>consecutively</u> to count four;

- Endangering the welfare of a child (count twelve): eight years' imprisonment, <u>consecutively</u> to count five;

- Endangering the welfare of a child (count thirteen): eight years' imprisonment, concurrently to count twelve;

- Possession of a defaced weapon (count fourteen): eighteen months' imprisonment, <u>consecutively</u> to count twelve.

- Witness tampering (count fifteen): five years' imprisonment, <u>consecutively</u> to count fourteen;

- Witness tampering (count sixteen): five years' imprisonment, <u>consecutively</u> to count fifteen;

- Witness tampering (count seventeen): five years imprisonment, concurrently to count sixteen; and

- Witness tampering (count nineteen): five years' imprisonment, concurrently to count sixteen.

The judge also imposed a five-year term of imprisonment, with a five-year period of parole ineligibility on the sole count of Indictment No. 18-02-0682, <u>consecutively</u> to Indictment No. 18-11-3569, for an aggregate sentence of forty-one years with a fifteen-year period of parole ineligibility.

We apply "a deferential standard" in reviewing a trial court's sentencing determination. <u>State v. Fuentes</u>, 217 N.J. 57, 70 (2014); <u>see also</u> <u>State v. Trindad</u>, 241 N.J. 425, 453 (2020). We do not "substitute [our] judgment" for that of the sentencing court. <u>State v. Case</u>, 220 N.J. 49, 65 (2014). Ordinarily, we will not disturb a sentence that is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. <u>State v. O'Donnell</u>, 117 N.J. 210, 215-16 (1989). However, our deference "applies only if the trial judge follows the Code and the basic precepts that channel sentencing discretion." <u>Case</u>, 220 N.J. at 65.

25

As a general matter, absent exceptions that do not apply here "[w]hen multiple sentences of imprisonment are imposed on a defendant for more than one offense . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5. "A sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case." State v. Cuff, 239 N.J. 321, 348 (2019).

Because the statute does not include specific criteria for determining whether concurrent or consecutive sentences are warranted, in State v. Yarbough, 100 N.J. 627, 643-44 (1985), our Supreme Court set forth standards to govern sentencing courts discretion, directing:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors; [and]

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense.

[Ibid.]

The Yarbough Court also had added a sixth factor, that "there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses," id. at 644, but the Legislature abrogated that aspect of Yarbough by amending N.J.S.A. 2C:44-5(a) to specifically provide "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." L. 1993, c. 223, § 1.

Like the statutory aggravating and mitigating factors, "[t]he Yarbough factors are qualitative, not quantitative," and "applying them involves more than merely counting the factors favoring each alternative outcome." Cuff, 239 N.J.

27

at 348. Instead, the sentencing court must consider all the Yarbough guidelines, with emphasis on the five subparts of the third guideline. State v. Rogers, 124 N.J. 113, 121 (1991). In applying the factors, "[t]he focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted." State v. Miller, 108 N.J. 112, 122 (1987).

Indeed, while this appeal was pending, our Supreme Court issued its opinion in State v. Torres, 246 N.J. 246 (2021), and again addressed the standards for imposing consecutive sentences. The Court stated that Yarbough requires the trial court to place on the record a statement of reasons for imposing consecutive sentences, which should address the overall fairness of the sentence. Id. at 267-68 (citing Miller, 108 N.J. at 122). The Court held that "[a]n explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment." Id. at 268 (citing Miller, 108 N.J. at 122).

A sentencing court must explain its decision to impose concurrent or consecutive sentences "for adequate appellate review." Miller, 108 N.J. at 122. If the court "fails to give proper reasons for imposing consecutive sentences at

a single sentencing proceeding, ordinarily a remand should be required for resentencing." State v. Carey, 168 N.J. 413, 424 (2001).

Here, the trial judge imposed seven consecutive sentences. Defendant challenges all but the consecutive sentence imposed on his certain persons conviction. He also concedes N.J.S.A. 2C:28-5(e) required the witness tampering sentence to run consecutively to the robbery sentence, but argues there was no basis to run both witness tampering sentences consecutive to each other.

In imposing consecutive sentences, the judge generally recited the Yarbough factors, but summarily found: aggravated assault was "a separate and distinct act by this defendant against the victim"; terroristic threats was a "separate act" and a concurrent term would otherwise reward defendant with "a free crime"; and possession of a defaced firearm was "a separate and distinct crime from . . . all the others." Turning to the consecutive sentence imposed on the child endangerment conviction in count twelve, the judge alluded to Yarbough factors (3)(b) and (d), finding:

> Here it was (indiscernible) victim. While the defendant says he would not harm his children, he waved around a handgun. He has threatened, he pointed a handgun at A[my] and D[ina]. He had threatened to kill her [sic] and he did this in front of the child. A consecutive term is appropriate here.

29

With regard to the witness tampering convictions, the judge found defendant's letter to Amy referenced in count fifteen, was sent "on a different day, a different time. It was a different objective, that is to try to persuade the main victim not to proceed in this case." Conversely, count sixteen pertained to "one of the phone calls that . . . defendant made to the primary victim in this case." The judge found this offense was "separate and distinct [from] the other counts. It was on a different time and different day. And there is a strong public interest . . . to deter witness tampering."

We are not convinced the trial judge conducted the proper analysis required under <u>Yarbough</u> for all but the witness tampering sentences. Absent from the judge's analysis on the other consecutive sentences is a consideration of all the <u>Yarbough</u> guidelines, including the five subparts of the third guideline. <u>Rogers</u>, 124 N.J. at 121. On remand, the trial judge shall undertake the requisite analysis and provide a statement of reasons "explaining the overall fairness of [the] sentence imposed" as required by <u>Torres</u>. 246 N.J. at 268. This is especially significant here because in his oral pronouncement at sentencing, the judge stated he was imposing a cumulative sentence of thirty-four and one-half years with fifteen years of parole ineligibility, when our independent review of the prison terms imposed on the various counts in contrast reveals that the judge

30

sentenced defendant to an aggregate sentence of forty-one years with fifteen years of parole ineligibility.

Accordingly, it is unclear from the record whether the judge misspoke or whether he intended to cap defendant's "total sentence" at thirty-four and one-half years with a fifteen-year parole disqualifier. See State v. Abril, 444 N.J. Super. 553, 564 (App. Div. 2016) (holding that "[i]n the event of a discrepancy between the court's oral pronouncement of sentence and the sentence described in the judgment of conviction, the sentencing transcript controls and a corrective judgment is to be entered"). On remand, the judge's total sentence shall accurately reflect the aggregate sentence imposed.

We turn briefly to defendant's pro se argument that the court did not give sufficient weight to his young age. At the time of defendant's sentencing on March 29, 2019, defendant's youth was not among the mitigating factors that the court was required by statute to consider. Effective, October 19, 2020, the Legislature enacted mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14) ("[t]he defendant was under 26 years of age at the time of the commission of the offense"). L. 2020, c. 110, § 1. Nonetheless, the judge acknowledged defendant's age, noting he was "a very young man."

We have considered the additional arguments presented by defendant in his pro se supplemental brief. We are convinced these arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed in part; reversed and remanded for resentencing in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3484-18