**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2804-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARQUISE HAWKINS,

    Defendant-Appellant.

_____

> Argued May 14, 2025 – Decided July 18, 2025
>
> Before Judges DeAlmeida and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-01-0200.
>
> Nadine Kronis, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the briefs).
>
> Frank J. Ducoat, Deputy Chief Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens, II, Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the brief).

PER CURIAM

Defendant Marquise Hawkins appeals the sentence he received on resentencing for the murder of a teenage boy during an armed robbery, the armed robbery of the murder victim and three others, and related offenses. We affirm defendant's sentence, but remand for the court to consider the practical effect of the consecutive sentences it imposed on defendant's parole eligibility date and to correct an error in the May 12, 2023 judgment of conviction (JOC).

I.

On February 17, 2012, defendant, then seventeen years old, and his two codefendants, twenty-year-old Haroon Perry, and sixteen-year-old Azim Brogsdale, drove around Irvington for approximately six hours looking for victims to rob. After seeing four teenage boys walking together on a sidewalk, Perry parked the car. Brogsdale and Perry, both armed with handguns, exited the vehicle and robbed the group at gunpoint. Defendant remained in the backseat of the car.

Brogsdale told the victims to empty their pockets and "if they ran they would get shot." When one victim attempted to escape, defendant shouted from the car, "[g]et the guy in the yellow jacket." Brogsdale and Perry opened fire, killing sixteen-year-old Khalil Williams, who was a victim of the robbery but

not the victim wearing the yellow jacket. Defendant and his codefendants took cash and cell phones from the victims. Defendant kept one of the cell phones.

Because defendant was a juvenile when the offenses were committed, jurisdiction of his delinquency case was waived to the Law Division from the Family Part pursuant to Rule 5:22-2. An Essex County grand jury subsequently indicted defendant, Perry, and Brogsdale, charging them with: (1) second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1; (2) four counts of first-degree robbery, N.J.S.A. 2C:15-1; (3) first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); (4) first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1)-(2); (5) first-degree knowing or purposeful murder, N.J.S.A. 2C:11-3(a)(1)-(2); (6) two counts of second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and (7) second-degree possession of handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a).

Defendant was tried separately and before his codefendants. The jury convicted him on all counts except one unlawful possession of a weapon count.

At his May 8, 2015 sentencing, the trial court found aggravating factor one, N.J.S.A. 2C:44-1(a)(1), the nature and circumstances of the offense; three, N.J.S.A. 2C:44-1(a)(3), the risk defendant will reoffend; and nine, N.J.S.A. 2C:44-1(a)(9), the need to deter defendant and others from violating the law.

3

When finding aggravating factor one, the court noted defendant's role in the offense, explaining that "the shooting did not start, nor did it appear that there was any intention to shoot anyone until the order was given by" defendant, as well as defendant's receipt of a cell phone taken from one of the victims.

The court found no mitigating factors. Although noting defendant's prior juvenile and criminal history consisted of only one dismissed deferred disposition for shoplifting, the court declined to find mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), defendant has no history of prior delinquency or criminal activity. The court stated, however, it would consider that defendant had no significant history of delinquency or criminal activity. The court also rejected mitigating factor thirteen, N.J.S.A. 2C:44-1(b)(13), conduct of youthful defendant substantially influenced by more mature defendant, because defendant gave the command to shoot the victim, appeared to be influencing Brogsdale, and was not influenced by Perry, the only adult defendant.

The court merged the conspiracy to commit robbery conviction with the four robbery convictions and imposed a fifteen-year term of incarceration with an eighty-five-percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, on each robbery conviction. The court directed those sentences be served concurrently with each other.

4

The court merged the conspiracy to commit murder conviction and the possession of a weapon for an unlawful purpose conviction with the knowing and purposeful murder conviction. The court imposed a forty-year term of imprisonment with an eighty-five-percent period of parole ineligibility pursuant to NERA on the felony murder conviction and a forty-year term of imprisonment with an eighty-five-percent period of parole ineligibility pursuant to NERA on the knowing and purposeful murder conviction.

The court ordered the sentences on the murder convictions be served concurrently with each other and consecutively to the sentences imposed on the robbery convictions. The court found "notwithstanding the fact that" the crimes "occurred at the same place, in a relatively short span of time," they were "separate acts of violence" and had "predominately independent objectives."

Finally, the court imposed an eight-year term of incarceration with a four-year period of parole ineligibility on the unlawful possession of a weapon conviction. The court directed the sentence on the unlawful possession of a weapon conviction be served concurrently with the other sentences.

A-2804-22

Thus, the court sentenced defendant to an aggregate term of fifty-five years of imprisonment, with an eighty-five-percent, or a forty-six-year-and-nine-month, period of parole ineligibility.[1]

We affirmed defendant's convictions. State v. Hawkins, No. A-4848-14 (App. Div. Apr. 9, 2018) (slip op. at 37). We rejected defendant's argument the trial court erred by ordering the sentences for the robbery convictions be served consecutively to the sentences for the murder convictions. Id. at 25-28.[2] We also rejected defendant's argument the aggravating and mitigating factors applied by the court were not supported by the record. Id. at 28-30.[3]

---

[1] In June 2015, pursuant to a negotiated plea agreement, Perry pled guilty to aggravated manslaughter, conspiracy, and two counts of robbery and agreed to testify at Brogsdale's trial. The court sentenced Perry to an aggregate seventeen-year term of imprisonment, with an eighty-five-percent period of parole ineligibility pursuant to NERA. In 2017, a jury convicted Brogsdale of all charges. The court sentenced Brogsdale to an aggregate term of fifty-five years in prison with a parole ineligibility period of fifty years and three months. We affirmed Brogsdale's convictions and remanded for resentencing because we found insufficient support for the sentencing court's application of an aggravating factor not applicable here. State v. Brogsdale, No. A-4782-16 (App. Div. Aug. 8, 2019) (slip op. at 33).

[2] We agreed with defendant and the State that the felony murder conviction should have been merged with the purposeful and knowing murder conviction. Id. at 28 n.5. We directed the trial court merge those convictions on remand.

[3] Although the JOC listed aggravating factor six, N.J.S.A. 2C:44-1(a)(6), the extent of defendant's prior criminal record and the severity of those offenses, the

A-2804-22

However, we found defendant's aggregate sentence of fifty-five years with forty-six years and nine months of parole ineligibility "approaches" the practical equivalent of a life sentence without parole under State v. Zuber, 227 N.J. 422, 446-47 (2017), which was issued after defendant was sentenced. Id. at 34, 37. In Zuber, the Court held the holding in Miller v. Alabama, 567 U.S. 460, 465 (2012), that the Eighth Amendment requires "a sentencing judge 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,' applies with equal strength to a sentence that is the practical equivalent of life without parole." 227 N.J. at 446-47 (quoting Miller, 567 U.S. at 465). The Miller Court set forth five factors, which will be discussed in greater detail below, that a sentencing court must consider when sentencing a juvenile to a sentence of life without the possibility of parole. 567 U.S. at 477-78. In our opinion on defendant's direct appeal, we noted the Zuber "Court explained that the 'proper focus' under the Eighth Amendment is 'the amount of real time a juvenile will spend in jail and not the formal label attached to his sentence.'" Hawkins, slip op. at 34 (quoting Zuber, 227 N.J. at 429).

---

court did not find this aggravating factor at sentencing. Id. at 30 n.6. We directed the trial court delete the mistaken reference to this aggravating factor from the JOC after resentencing. Ibid.

A-2804-22

We also observed that in <u>Zuber</u>, the Court held in addition to the factors set forth in <u>Miller</u>, a court sentencing a juvenile must consider the principles established in <u>State v. Yarbough</u>, 100 N.J. 627, 643-44 (1985), and "the aggregate impact of consecutively-imposed sentences . . . bearing in mind the real-world practical expectation of when such an offender with consecutive aggregate sentences might be eligible for parole." <u>Hawkins</u>, slip op. at 35 (citing <u>Zuber</u>, 227 N.J. at 449-50).

We therefore vacated defendant's sentence and remanded for resentencing and for the trial court to consider the factors established in <u>Miller</u>, including defendant's "'immaturity, impetuosity, and failure to appreciate risks and consequences'; 'family and home environment'; family and peer pressures; 'inability to deal with police officers or prosecutors' or his own attorney; and 'the possibility of rehabilitation.'" <u>Id.</u> at 36 (quoting <u>Zuber</u>, 227 N.J. at 453). In addition, we directed the court to consider the practical implication consecutive sentences would have on defendant's eligibility for parole. <u>Id.</u> at 35.

The original sentencing judge retired prior to issuance of our decision. On remand, a new judge held a two-day hearing at which defendant presented the testimony of Megan Perrin, an expert neuropsychologist. In addition, defendant, his stepfather, his cousin, and the murder victim's mother made statements.

Having interviewed defendant and reviewed his educational, juvenile, criminal, and prison records, social history, familial relationships, and the environment in which he was raised, as well as the trial transcripts, Perrin opined defendant acted impetuously when he told his cohorts to "get" the boy in the yellow jacket and without consideration of the significant risk of death created by his command. She also opined defendant's decision-making and ability to navigate the legal system were impaired by his upbringing and age, but he is capable of rehabilitation. Perrin relied in part on scientific evidence with respect to brain development in teenage boys. She opined that because of his immature brain development, defendant's responses to highly-charged emotional situations, such as the armed robbery, were the product of impulsive instincts overwhelming rational decision-making, with little regard for potential negative consequences. Perrin acknowledged defendant's searching for robbery victims over a six-hour period was not impetuous.

Perrin opined defendant's participation in the robbery and murder were motivated, in part, by his desire to impress Perry, who had a reputation in the community as a successful drug dealer with access to women and money. According to Perrin, defendant's motivation for acceptance by Perry may have been attributable to the absence of a consistent father figure in defendant's life

9

during his childhood and adolescence, as well as his father's position in the community as a respected drug dealer who had served time in State prison. When he was not incarcerated, defendant's father intermittently appeared in defendant's life, but also absented himself for long periods. Defendant's access to his father was limited to his presence during his father's street level drug dealing.

In addition, Perrin noted defendant's repeated exposure to violent acts against others during his childhood likely affected his participation in the robbery and murder. Defendant witnessed several adults rob his mother, was present at a block party when gunshots were fired, and witnessed an adult shot another adult in the street near his home.

Perrin testified defendant had limited exposure to the legal system prior to his arrest for the robberies and murder. This left him, in Perrin's opinion, with limited capacity to navigate the legal system and deal with police and prosecutors. According to Perrin, defendant did not participate in a meaningful way in plea negotiations and was not engaged in his defense, likely because of depression and a strong desire not to implicate his codefendants. In addition, she noted defendant did not have a trusting relationship with his trial counsel

A-2804-22

and relied on the advice of inmates at the county jail more than advice from his attorney.

Perrin opined defendant is capable of rehabilitation based on his lack of prison infractions while in State custody and his participation in numerous educational programs while incarcerated. She noted defendant's regret for the death of his victim, acknowledgment of the pain he caused the victim's family, and recognition of the harm his conduct inflicted on his family.

In his statement to the resentencing court, defendant took responsibility for his actions and apologized to the victim's family and his family. He requested the court consider his impetuosity at the time of the crimes and the extent to which he matured during his incarceration.

On March 27, 2023, the court resentenced defendant. The court interpreted our remand as limited to: (1) application of the Miller factors to determine the appropriate length of defendant's sentence; (2) merger of the felony murder conviction with the knowing and purposeful murder conviction; and (3) removal of aggravating factor six from the JOC. In addition, the court noted defendant was to be sentenced as he stood before the court at resentencing, State v. Jaffe, 220 N.J. 114, 116 (2014), and entitled to the benefit of mitigating factor fourteen, N.J.S.A. 2C:44-1(b)(14), defendant was under twenty-six years

old at the time of the commission of the offenses, which was enacted in 2020. See L. 2020, c. 110, § 1 (eff. Oct. 19, 2020).

In its oral opinion, the court applied the factors set forth in Miller. The court found defendant's decision to search for victims to rob over a prolonged period and command to his cohorts to "get" one of the victims were not impetuous. Perrin conceded the hours-long search for victims was not impetuous and the court found defendant ordered Brogsdale to kill the victim because he wanted to avoid the consequences of being apprehended.

The court also found defendant produced no evidence establishing he suffered physical or emotional abuse as a youth or lived in a dysfunctional home environment. To the contrary, the court found defendant had a supportive family, including a positive male role model in his stepfather, who was a consistent presence in defendant's life, even if defendant chose not to engage with him until his late teenage years. While defendant grew up poor and was exposed to violence in his neighborhood, the court found insufficient evidence he was raised in an oppressive environment from which he could not escape.

The court found defendant did not commit his offenses because of peer pressure. Instead, the court concluded "[t]he record is clear as to defendant's level of culpability as to the planning and participation in the pre-meditated

robbery conduct." The court also found it was not until defendant's command to "get" the victim in the yellow jacket that the younger Brogsdale, under pressure from defendant, began shooting at the victims.

In addition, the court found defendant did not establish he might have been convicted of lesser offenses if not for incompetencies associated with his youth. The court found defendant's failure to comprehend the criminal process and trust his attorney "is not unique or necessarily based upon his age."

Noting defendant did not mention the victim's name in his statement expressing his remorse for his crimes, the court found defendant did not appear to truly acknowledge his full culpability. However, the court found defendant established he is capable of rehabilitation, in light of his infraction-free prison record and participation in rehabilitative services while incarcerated.

The court incorporated the original sentencing court's findings that aggravating factors one, three, and nine applied. As noted above, the court also applied mitigating factor fourteen, which the court gave "great weight."

The court did not alter the merger decisions of the original sentencing court, other than merging the felony murder conviction with the knowing and purposeful murder conviction, as directed in our remand. The court sentenced

defendant to a thirty-year term of imprisonment with a thirty-year period of parole ineligibility on the knowing and purposeful murder conviction.

The court did not alter the sentences imposed on the four robbery convictions. Thus, the court sentenced defendant to a fifteen-year term of imprisonment, with an eighty-five-percent period of parole ineligibility pursuant to NERA, on each robbery conviction. The period of parole ineligibility on each sentence for robbery is twelve years and nine months. The court directed the sentences on the robbery convictions be served concurrently with each other and consecutively to the sentence on the murder conviction.

The court did not change the sentence of eight years with a four-year period of parole ineligibility for possession of a weapon for an unlawful purpose. The court directed the sentence for that count be served concurrently with the sentences for murder and the robberies.

Thus, the court sentenced defendant to an aggregate sentence of forty-five years imprisonment, which is ten years less than the aggregate sentence of fifty-five years imprisonment he originally received. However, the court sentenced defendant to an aggregate period of parole ineligibility of forty-two years and nine months, which is four years less than the period of parole ineligibility to

14

which he was originally sentenced.[4]  A May 12, 2023 JOC memorialized the sentence imposed on defendant.[5]

This appeal followed.  Defendant raises the following arguments:

POINT I

THE RESENTENCING COURT'S FAILURE TO PROPERLY CONSIDER THE <u>MILLER</u> FACTORS DENIED [DEFENDANT] DUE PROCESS AND RESULTED IN THE IMPOSITION OF AN AGGREGATE SENTENCE THAT WAS FIVE YEARS LONGER THAN THE ONE RECOMMENDED BY THE STATE. ACCORDINGLY, HE IS ENTITLED TO A NEW RESENTENCING.

A. THE <u>MILLER</u> FACTORS WEIGH STRONGLY AGAINST THE IMPOSITION OF A LENGTHY SENTENCE.

---

[4] After serving twenty years of his sentence, defendant will be eligible to argue for a reduction in his sentence and parole-ineligibility period based on a demonstration of maturity and rehabilitation during his incarceration.  <u>State v. Comer</u>, 249 N.J. 359, 370 (2022).

[5] The May 12, 2023 JOC indicates the court imposed a sentence on the knowing and purposeful murder conviction of thirty years of imprisonment with an eighty-five-percent period of parole ineligibility.  This differs from the term imposed at resentencing.  The parties' briefs do not address this apparent error.  "In the event of a discrepancy between the court's oral pronouncement of sentence and the sentence described in the [JOC], the sentencing transcript controls and a corrective judgment is to be entered."  <u>State v. Abril</u>, 444 N.J. Super. 553, 564 (App. Div. 2016).  We therefore remand for entry of a JOC reflecting a sentence of thirty years with a thirty-year period of parole ineligibility for defendant's knowing and purposeful murder conviction.

i. THE COURT FAILED TO CONSIDER THE IMPACT OF [DEFENDANT'S] YOUTH ON HIS PARTICIPATION IN THE OFFENSE, AS REQUIRED UNDER MILLER FACTOR ONE.

ii. THE COURT FAILED TO CONSIDER HOW [DEFENDANT'S] CONDUCT WAS AFFECTED BY PEER PRESSURE – INCLUDING HIS ADULT CO-DEFENDANT'S PARTICIPATION IN THE OFFENSE – AS REQUIRED UNDER MILLER FACTOR THREE.

iii. THE COURT FAILED TO PROPERLY CONSIDER THE EFFECT OF [DEFENDANT'S] YOUTH ON HIS ABILITY TO DEAL WITH POLICE AND PROSECUTORS AND TO ASSIST IN HIS OWN DEFENSE, AS REQUIRED UNDER MILLER FACTOR FOUR.

B. THE RESENTENCING COURT DID NOT CONDUCT ANY ANALYSIS WHEN IMPOSING CONSECUTIVE SENTENCES. HAD IT DONE SO, IT WOULD HAVE IMPOSED CONCURRENT SENTENCES.

C. THE RESENTENCING COURT IMPROPERLY ADOPTED THE ORIGINAL AGGRAVATING FACTORS BASED ON THE REASONS PROVIDED BY THE 2015 SENTENCING COURT, FAILED TO ADDRESS THE MITIGATING FACTORS RAISED BY [DEFENDANT], AND FAILED TO ORDER A NEW PRESENTENCE REPORT.

i. HAD THE RESENTENCING COURT PROPERLY ASSESSED THE AGGRAVATING FACTORS IN LIGHT OF THE EVIDENCE PRESENTED AT RESENTENCING AND THE

16

MILLER FACTORS, IT WOULD HAVE GIVEN THEM MINIMAL WEIGHT AT BEST.

ii. THE RESENTENCING COURT FAILED TO ADDRESS THE MITIGATING FACTORS REQUESTED BY [DEFENDANT], WHICH WERE AMPLY SUPPORTED BY THE RECORD.

D. DESPITE FINDING [DEFENDANT] CLEARLY CAPABLE OF REHABILITATION AND APPLYING MILLER FACTOR FIVE, THE COURT ONCE MORE IMPOSED AN EXTREMELY LENGTHY SENTENCE WITH A NEARLY IDENTICAL PERIOD OF PAROLE INELIGIBILITY.

II.

"Appellate review of the length of a sentence is limited."  State v. Miller, 205 N.J. 109, 127 (2011).  An appellate court "must not substitute its judgment for that of the sentencing court[,]" State v. Fuentes, 217 N.J. 57, 70 (2014), and is bound to affirm the sentence absent a "clear abuse of discretion."  State v. Roth, 95 N.J. 334, 363 (1984).

> Appellate courts must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not "based upon competent credible evidence in the record;" or (3) "the application of the guidelines to the facts" of the case "shock[s] the judicial conscience."
>
> [State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting Roth, 95 N.J. at 364-65).]

17

A.    Application of Miller Factors.

Our remand directed the court to apply the holdings in Zuber and Miller to determine whether the length of defendant's original sentence comported with the Eighth Amendment. In Miller, 567 U.S. at 489, the Court held the Eighth Amendment prohibits the imposition of a mandatory life sentence without parole on a defendant convicted of homicide while a juvenile. "[T]he Court grounded its decision[] on commonly accepted scientific and sociological notions about the unique characteristics of youth and the progressive emotional and behavioral development of juveniles." State ex rel. C.K., 233 N.J. 44, 68 (2018).

In Zuber, 227 N.J. at 446-47, our Supreme Court held that "Miller's command that a sentencing judge 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison,' applies with equal strength to a sentence that is the practical equivalent of life without parole." (quoting Miller, 567 U.S. at 480) (citation omitted). In addition, the Court held that "the force and logic of Miller's concerns apply broadly:  to cases in which a defendant commits multiple offenses during a single criminal episode; to cases in which a defendant commits multiple offenses on different occasions; and to homicide and non-homicide cases." Id. at 448.

A-2804-22

The Court held the five factors set forth in <u>Miller</u> must be considered when sentencing defendants to lengthy sentences for crimes committed as a juvenile. Those factors are:

> Mandatory life without parole [or its equivalent] for a juvenile
>
> [1]    precludes consideration of his chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences.
>
> [2]    prevents taking into account the family and home environment that surrounds him – and from which he cannot usually extricate himself – no matter how brutal or dysfunctional.
>
> [3]    neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.
>
> [4]    ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth – for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys.
>
> [5]    disregards the possibility of rehabilitation even when the circumstances most suggest it.
>
> [<u>Miller</u>, 567 U.S. at 477-78 (citations omitted).]

A-2804-22

Zuber noted, "even when judges begin to use the Miller factors at sentencing, a small number of juveniles will receive lengthy sentences with substantial periods of parole ineligibility, particularly in cases that involve multiple offenses on different occasions or multiple victims." 227 N.J. at 451.

Defendant argues the resentencing court erred when it found he only established one of the Miller factors. In addition, he argues the court, although finding defendant was capable of rehabilitation, did not afford him meaningful relief when it reduced the sentence on his murder conviction by ten years because the imposition of consecutive sentences for the murder and robbery convictions effectively reduced his period of parole ineligibilty by only four years. We disagree.

The resentencing court's findings with respect to the Miller factors are sufficiently supported by the record. The court, having heard the testimony of defendant's expert, found her opinion lacked crediblity in many respects.

The court rejected the expert's opinion defendant's command to "get" the victim was impetuous. The court found instead that defendant was aware of the potential consequences of being caught participating in an armed robbery and sought to prevent the victim's escape to avoid detection. We cannot conclude the court's finding on this point lacks sufficient support in the record.

A-2804-22

We also see no basis on which to disturb the court's finding the evironment in which defendant was raised, while difficult, was not so extreme as to warrant further reduction in his sentence. Defendant was raised by his biological mother and lived with his six half-sisters. While the family faced financial difficulties, the record contains no evidence defendant was deprived of food or lodging. Nor is there evidence defendant was subjected to physical or emotional abuse or that there was substance abuse in the home. Defendant witnessed violence in his neighborhood, including the robbery of his mother. Yet, the record contains no evidence defendant was subjected to violent acts as a child.

Defendant's father was a known drug dealer and convicted felon who was often incarcerated. There is no doubt his frequent absences and involvement in illegal activity were negative influences on defendant. Yet, a stepfather was present and attempted to nurture a relationship with defendant. Defendant chose instead to spend time on the streets where his father was selling drugs and where he connected with his soon-to-be codefendants. While these circumstances are unfortunate, we do not find the resentencing court erred when it concluded they did not warrant a further reduction in defendant's sentence.

We also see no basis on which to disturb the resentencing court's conclusion defendant's criminal acts were not the result of him succumbing to

21

peer pressure or undertaken to impress Perry. The record supports the conclusion defendant planned the armed robbery with his codefendants and gave the order to "get" the victim. Brogsdale, who is younger than defendant, executed defendant's order when he shot and killed Williams.

The resentencing court found defendant's lack of trust in his trial attorney, as well as his desire not to implicate his codefendants, were not unique and not necessarily attributable to defendant's age. Our review of the record identified no evidence defendant would have secured a more favorable outcome had he not been youthful. Defendant produced no evidence he was offered a plea bargain or that he would have been willing to testify against his codefendants had such an offer been made. Nor does the record establish that defendant, who was twenty at the time of trial, was unable to assist his counsel. The record supports the conclusion defendant was dedicated to refusing to cooperate with the State lest he be branded a "snitch" in his community.

B. <u>Aggravating and Mitigating Factors.</u>

We detect no error in the court's finding, like the original sentencing court, that aggravating factors one, three, and nine were applicable. We affirmed the original sentencing court's application of those factors and are not convinced by defendant's argument that developments since the original sentencing

invalidated their applicability. Nor are we persuaded by defendant's argument the resentencing court was required to order the production of a new presentence report. He cites no authority in support of that contention and we recognize neither the Rules of Court nor the Code of Criminal Justice mandate a new presentence report on resentencing. Pursuant to N.J.S.A. 2C:44-6(a), however, "[t]he court may order a presentence investigation" even when an investigation is not "required by the Rules of Court." Here, however, the court was fully apprised of the progress defendant made while incarcerated, including through the testimony of his expert neuropsychologist. We therefore conclude an updated presentence report was not necessary.

Notably, the resentencing court found mitigating factor fourteen, enacted after the original sentence was imposed, applicable. The court gave "great weight" to that factor, which, along with the court's finding defendant was capable of rehabilitation under Zuber, resulted in a ten-year reduction in his sentence for the knowing and purposeful murder conviction. Our review of the record reveals no error in the resentencing court's application and weighing of the aggravating and mitigating factors.

A-2804-22

C.    Effect of Consecutive Sentences.

We also find no error in the resentencing court's imposition sentences for the robbery convictions to be served consecutively to the sentence for the murder conviction. In the direct appeal, we affirmed the imposition of consecutive sentences for those convictions for several reasons. The principles supporting our decision remain the same after resentencing.

We agree, however, with defendant's argument that the resentencing court did not consider the practical effect of the consecutive sentences on when he will be eligible for release on parole. As noted above, after resentencing defendant will be eligible for parole after serving forty-two years and nine months, which is four years sooner than he would have been eligible for parole under his original sentence. We remand for the resentencing court to consider the aggregate impact of consecutively-imposed sentences on the "real-time outcome" of defendant's eligibility for parole. See Zuber, 227 N.J. at 449-50. We offer no view on the outcome of the remand.

We have considered defendant's remaining arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Defendant's sentence is affirmed.  The matter is remanded for the court to consider the practical effect of the consecutive sentences on defendant's parole eligibility date and entry of an amended JOC reflecting a sentence of thirty years imprisonment with a thirty-year period of parole ineligibility for count eight of the indictment, knowing and purposeful murder.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2804-22